IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| SHAVONDA BAILEY, *as Next Friend of* K. A., and P. A.; VIVIAN LAMPKINS, *as Next Friend of* J. L.; BELINDA CARRANCO, *as Next Friend of* Z. A.; BRANDIE OLIVER, *as Next Friend of A. O.*; and CHRISTINE OWENS, *as Next Friend of M. O.* <br><br> v. <br><br> CITY OF SAN ANTONIO, TEXAS; NATHAN PRESTON, *Individually*; VIDAL DIAZ, *Individually;* MICHAEL FLETCHER, *Individually*; FRANCISCO GALVAN, *Individually*; MATTHEW FLORES, *Individually;* AUBREY PLAUCHE, *Individually*; MATTHEW QUINTANILLA, *Individually*; ROBERT TAMEZ, *Individually*; and PAUL TRIGO, *Individually* | CIVIL ACTION NO. 5:13-cv-700-FB <br> JURY TRIAL |

## PLAINTIFFS' SECOND AMENDED ORIGINAL ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:**

**NOW COME** Plaintiffs, Shavonda Bailey, a/n/f of K.A. and P.A., Vivian Lampkins a/n/f of J.L., Belinda Carranco, a/n/f of Z.A., Brandie Oliver a/n/f of A.O., and Christine Owens a/n/f of M.O. filing this, their *Plaintiffs' Second Amended Original Complaint*, and bringing this action against the City of San Antonio, Texas, Nathan Preston, *Individually,* Vidal Diaz, *Individually,* Michael Fletcher, *Individually*, Francisco Galvan, *Individually*, Matthew Flores, *Individually,* Aubrey Plauche, *Individually,* Matthew Quintanilla, *Individually*, Robert Tamez, *Individually* and Paul Trigo, *Individually* as said Defendants have denied Plaintiffs' (and/or the late Pierre Abernathy) rights guaranteed by the Constitution and laws of the United States of America and the State of Texas.

## JURISDICTION AND VENUE

1. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(3) (civil rights). This court also has supplemental jurisdiction pursuant to 28 U.S.C.S. § 1367 to hear the state claims that will be set forth in this complaint. Venue is proper in the Western District of Texas, San Antonio Division, as this is the district where the claim arose in accordance to 29 U.S.C.§ 1391(b).

## PARTIES

2. Plaintiff Shavonda Bailey is the mother of K. A. and P. A. and is a resident of San Antonio, Bexar County, Texas.

3. Plaintiff Vivian Lampkins is the mother of J. L. and is a resident of San Antonio, Bexar County, Texas.

4. Plaintiff Belinda Carranco is the mother of Z. A. and is a resident of San Antonio, Bexar County, Texas.

5. Plaintiff Brandie Oliver is the mother of A. O. and is a resident of San Antonio, Bexar County, Texas.

6. Plaintiff Christine Owens is the mother of M. O. and is a resident of San Antonio, Bexar County, Texas.

7. Defendant City of San Antonio, Texas (hereinafter "City of San Antonio and/or City"), is a political subdivision of the State of Texas. Defendant has filed an answer and made an appearance herein.

8. Defendant Nathan Preston (hereinafter "Preston") was, at all times material to this suit, an officer employed by the SAN ANTONIO POLICE DEPARTMENT. Each of the acts complained of herein arises from the conduct of Defendant while acting under color of state law, and was committed

within the scope of his employment and authority with the SAN ANTONIO POLICE DEPARTMENT and/or the BEXAR COUNTY SHERIFF'S DEPARTMENT. Defendant has filed an answer and made an appearance herein.

9. Defendant Vidal Diaz (hereinafter "Diaz") was, at all times material to this suit, an officer employed by the SAN ANTONIO POLICE DEPARTMENT. Each of the acts complained of herein arises from the conduct of Defendant while acting under color of state law, and was committed within the scope of his employment and authority with the SAN ANTONIO POLICE DEPARTMENT. Defendant has filed an answer and made an appearance herein.

10. Defendant Michael Fletcher (hereinafter "Fletcher") was, at all times material to this suit, an officer employed by the SAN ANTONIO POLICE DEPARTMENT. Each of the acts complained of herein arises from the conduct of Defendant while acting under color of state law, and was committed within the scope of his employment and authority with the SAN ANTONIO POLICE DEPARTMENT. Defendant has filed an answer and made an appearance herein.

11. Defendant Francisco Galvan (hereinafter "Galvan") was, at all times material to this suit, an officer employed by the SAN ANTONIO POLICE DEPARTMENT. Each of the acts complained of herein arises from the conduct of Defendant while acting under color of state law, and was committed within the scope of his employment and authority with the SAN ANTONIO POLICE DEPARTMENT. Defendant has filed an answer and made an appearance herein.

12. Defendant Matthew Flores (hereinafter "Flores") was, at all times material to this suit, an officer employed by the SAN ANTONIO POLICE DEPARTMENT and/or the BEXAR COUNTY SHERIFF'S DEPARTMENT. Each of the acts complained of herein arises from the conduct of Defendant while acting under color of state law, and was committed within the scope of his employment and authority

with the SAN ANTONIO POLICE DEPARTMENT. Defendant has filed an answer and made an appearance herein.

13. Defendant Aubrey Plauche (hereinafter "Plauche") was, at all times material to this suit, an officer employed by the SAN ANTONIO POLICE DEPARTMENT and/or the BEXAR COUNTY SHERIFF'S DEPARTMENT. Each of the acts complained of herein arises from the conduct of Defendant while acting under color of state law, and was committed within the scope of his employment and authority with the SAN ANTONIO POLICE DEPARTMENT. Defendant has filed an answer and made an appearance herein.

14. Defendant Matthew Quintanilla (hereinafter "Quintanilla") was, at all times material to this suit, an officer employed by the SAN ANTONIO POLICE DEPARTMENT and/or the BEXAR COUNTY SHERIFF'S DEPARTMENT. Each of the acts complained of herein arises from the conduct of Defendant while acting under color of state law, and was committed within the scope of his employment and authority with the SAN ANTONIO POLICE DEPARTMENT. Defendant has filed an answer and made an appearance herein.

15. Defendant Robert Tamez (hereinafter "Tamez") was, at all times material to this suit, an officer employed by the SAN ANTONIO POLICE DEPARTMENT and/or the BEXAR COUNTY SHERIFF'S DEPARTMENT. Each of the acts complained of herein arises from the conduct of Defendant while acting under color of state law, and was committed within the scope of his employment and authority with the SAN ANTONIO POLICE DEPARTMENT. Defendant has filed an answer and made an appearance herein.

16. Defendant Paul Trigo (hereinafter "Trigo") was, at all times material to this suit, an officer employed by the SAN ANTONIO POLICE DEPARTMENT and/or the BEXAR COUNTY SHERIFF'S DEPARTMENT. Each of the acts complained of herein arises from the conduct of Defendant while

acting under color of state law, and was committed within the scope of his employment and authority with the SAN ANTONIO POLICE DEPARTMENT. Defendant has filed an answer and made an appearance herein.

### **FACTS**

17. Whenever, in this complaint it is alleged that any Defendant did any act, thing, and/or omission, it is meant that Defendant and/or Defendant's officers, agents, servants, employees or representatives did such act, thing and/or omission and that at the time it was done with full authorization and/or ratification of Defendant or done in the normal and routine course and scope of employment of Defendant and/or Defendant's officers, agents, servants, employees or representatives.

18. On or about August 4, 2011, in the early morning hours, Pierre Abernathy (hereinafter "Abernathy"), a paranoid schizophrenic, was going to pick up his fiancé from work and encountered San Antonio Police officers beginning to follow him. Because of past encounters with law enforcement, Mr. Abernathy feared for his safety. Mr. Abernathy drove to his mother's house where he believed it would be safe. Mr. Abernathy pulled into his mother's driveway and proceeded to exit his vehicle. Defendants Preston, Diaz, Fletcher, Flores, Galvan, Plauche, Quintanilla, Tamez and Trigo chased Mr. Abernathy around the front yards of his mother and neighbors and began tazing him. At one point Mr. Abernathy was in his neighbor's front yard and while Defendants Preston, Diaz, Fletcher, Flores, Galvan, Plauche, Quintanilla, Tamez and Trigo had him in custody with his hands cuffed behind his back they decided to punish Mr. Abernathy, and released a K-9 unit who bit and mauled Mr. Abernathy as his mother, family, and neighbors watched in horror. Defendants Preston, Diaz, Fletcher, Flores, Galvan, Plauche, Quintanilla, Tamez and Trigo then began to savagely beat Mr. Abernathy, while he lay there defenseless in the fetal position. While they were

beating Mr. Abernathy, Defendants Preston, Diaz, Fletcher, Flores, Galvan, Plauche, Quintanilla, Tamez and Trigo were boasting and bragging, encouraging each other saying "yeah get some, yeah get some" while Mr. Abernathy lay motionless Defendants Preston, Diaz, Fletcher, Flores, Galvan, Plauche, Quintanilla, Tamez and Trigo continued beating Mr. Abernathy as if he was a pinata using their fists and batons as well as tazing him as the K-9 unit mauled him like his favorite dog treat. Seeing Mr. Abernathy lying there motionless, a neighbor who is a nurse offered to provide medical attention and was told to stay back or she would be arrested as well. During the attack, Mr. Abernathy's mother told Defendants Preston, Diaz, Fletcher, Flores, Galvan, Plauche, Quintanilla, Tamez and Trigo that her son was a paranoid schizophrenic, and he did not understand and begged to let her mediate and diffuse the situation. Instead the officers ordered her to return to her home while her son lay there dying. Mr. Abernathy died from his savage beating. At not time during the incident was Mr. Abernathy violent and he did not resist the officers requests.

19. Plaintiffs are informed and believe, and thereupon allege that in committing said acts and/or omissions, each Defendant was the agent and employee of each other Defendant and was acting within such agency and employment and that each Defendant was acting under color of state law.

20. Furthermore, said excessive force committed against Mr. Abernathy by the individual Defendants was not performed in good a faith manner to maintain or restore discipline, but was committed maliciously, intentionally, and sadistically for the very purpose of punishing and causing injury and/or death to Mr. Abernathy.

21. At all pertinent times, Defendants City of San Antonio and/or SAN ANTONIO POLICE DEPARTMENT authorized and/or ratified the wrongful and tortious acts and/or omissions described herein.

## FIRST CLAIM FOR RELIEF - - §1983

22. The allegations contained in Paragraphs 17 thru 21 are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading.

23. The Civil Rights of 1871 (Ku Klux Klan Act), now codified as 42 U.S.C.S. §1983 as federal law provides: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C.S. §1983.

24. The state action requirement for standing under 42 U.S.C.S. §1983 has more commonly been referred to as "color of state law," from the statute itself. Plaintiffs are informed and believe, and thereupon alleges that, in committing said acts and/or omissions, each Defendant was the agent and employee of each other Defendant and was acting within such agency and employment and that each Defendant was acting under color of state law.

25. 42 U.S.C.S. §1983 requires that the conduct complained of must have deprived the person of some privilege or immunity secured by the Constitution or laws of the United States. As such, Plaintiffs allege that Defendants, jointly and/or severally deprived them (or Mr. Abernathy) of their Fourth Amendment rights and those rights, privileges, and immunities as applied to the states through the Fourteenth Amendment. Defendants violated this provision by the following actions and/or omissions, *inter alia*:

   a) by using excessive force and/or deadly force in the course of Defendants' attempted custody of Mr. Abernathy, in violation of the Fourth Amendment and its "reasonableness" standard. Plaintiffs therefore plead that Mr. Abernathy was unlawfully beat, tazed and mauled to death. Said actions resulted directly and only

> from the use of force that was clearly excessive to the need, and the excessiveness of which was objectively unreasonable; and
>
> b)  by failing to intervene, where such intervention would have prevented the violations and/or injuries of Plaintiffs/Mr. Abernathy.

26. Defendants' actions and/or omissions were "objectively unreasonable" in light of the facts and circumstances confronting them without regard to their underlying intent or motivation. Clearly, careful attention to the facts and circumstances of this particular case demonstrates the unreasonableness of Defendants' actions. In light of the fact that Mr. Abernathy was not resisting Defendants and was in laying in the fetal position as he was repeatedly being tazed, beaten with batons and fists and mauled by a K-9 unit, it is initially absurd that Defendants would deem force (much less deadly) was warranted and/or required. Furthermore, Mr. Abernathy never posed an immediate threat to the safety of the individual Defendants. Furthermore, Mr. Abernathy never pointed a gun or any other kind of weapon at anyone or waived a weapon around. For these and other reasons, it was objectively unreasonable for Defendants Preston, Diaz, Fletcher, Flores, Galvan, Plauche, Quintanilla, Tamez and Trigo to beat, taze and allow a K-9 to maul Mr. Abernathy.

27. **§ 1983 - Excessive Force** Plaintiffs plead that Defendants used excessive force and/or deadly force in the course of the officers' supposed arrest, and/or investigatory stop, and/or other "seizure" of a free citizen, such as Mr. Abernathy, in violation of the Fourth Amendment and its "reasonableness" standard. Plaintiffs therefore plead that Mr. Abernathy was unlawfully assaulted, physically beaten, tazed and mauled by Defendants Preston, Diaz, Fletcher, Flores, Galvan, Plauche, Quintanilla, Tamez and Trigo . Said actions resulted directly and only from the use of force that was clearly excessive to the need, and the excessiveness of which was objectively unreasonable.

28. Under §1983, Defendant City of San Antonio is also liable for failing to supervise and/or failing to train, and/or acquiescence in unconstitutional behavior by subordinates. First, said

8

Defendants failed to properly train and failed to properly supervise their officers. Said Defendant is liable under §1983, as there is a causal connection between his actions and/or omissions and the alleged constitutional violations, as outlined throughout this entire pleading. In fact, said Defendant did not sanction the individual Defendants' conduct and did not punish them accordingly, thereby sanctioning their actions, amounting to a departmental policy that violated Plaintiffs' civil rights. Said Defendant's failure to supervise or train amounted to gross negligence or deliberate indifference.

29. It is also well-established that municipalities are liable under 42 U.S.C.S. §1983 for constitutional torts that are in compliance with their customs, practices, policies or procedures. A municipality is liable for constitutional deprivations visited pursuant to governmental custom even though such custom has not received formal approval through the body's official decision making channels. In this case, Defendant City of San Antonio is liable because it sanctioned the custom, practice and/or policy or procedures of, *inter alia*, 1) using excessive, and oftentimes deadly force, to effectuate what are otherwise routine arrests, 2) using deadly force when such is not necessary and/or allowable, 3) ignoring the serious need for training and supervision of their officers in regards to the use of force, 4) failing to discipline those persons whom are found to have engaged in the use of excessive force upon those entrusted to their care and/or under their control, 5) failing to adequately supervise and/or observe their employees and/or officers including reservist, 6) failing to provide adequate training in regard to the availability of alternative means of detaining persons apart from the use of force and/or deadly force, and 7) failing to train officers in the proper use of deadly force for prevention of escape and/or detention. Such policy and/or customs were the "moving force" behind the constitutional violation (excessive force) exacted upon Mr. Abernathy and was the "cause in fact" of his injuries.

30. The actions and/or inaction taken in this case was uncalled for and taken pursuant to the customary practices and/or policies or procedures that were sanctioned by all named entity Defendants. Liability for Defendants City of San Antonio is established under §1983 because the "turn a blind eye" approach to the use of excessive force (in more particular, deadly force) is a persistent, widespread practice of the city employees -- namely police officers -- that, although not authorized by officially adopted policy, is so common and well settled as to constitute a custom that fairly represents official policy. Defendant City of San Antonio had actual or constructive knowledge of each practice, custom, and/or policy or procedure and numerous prior incidents of such conduct and/or inaction as to establish accession to that custom by the policy makers. Defendant City of San Antonio's unspoken policies above is a decision that reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory rights will follow the decision. In the alternative, Defendant City of San Antonio is liable under §1983 for failing to adopt clear policies outlining the criteria for determining the need for, the availability of and/or the means by which to use force.

31. Moreover, Defendant City of San Antonio is liable for the inadequate training of their officers under §1983. Liability attaches to Defendant City of San Antonio because its failure to train amounts to deliberate indifference to the rights of the persons with whom they come in contact.

32. Plaintiffs further allege that Defendants, jointly and/or severally have violated Mr. Abernathy' Fourth Amendment rights when he was unreasonably and unlawfully detained.

33. **§ 1983 - Qualified Good Faith Immunity**. Qualified good faith immunity stands for the proposition that even though the civil rights of a complainant may have been violated, if the officer engaged in the conduct in good faith there is no liability for that individual. The standard by which an officer's entitlement to good faith qualified immunity is objective not subjective. The

determination of objective reasonableness must be based on a version of the facts most favorable to the Plaintiffs. To the extent that credibility or fact questions exist, a fact-finder continues to be necessary. In the instant case, Plaintiffs allege that the individual Defendants are not entitled to claim "qualified good faith immunity." Importantly, the individual Defendants never had a good faith belief in their conduct because they acted in a manner demonstrating that they were plainly incompetent and knowingly violated Mr. Abernathy' civil rights. When the pleadings (and/or facts) are taken in the light most favorable to the Plaintiffs, it is clear that Mr. Abernathy was simply frightened and pulled into his mother's front yard, not making any move to use a weapon of any kind, and that at no time did he brandish any weapon and/or give the individual Defendants cause for alarm. Any reason given by the individual Defendants for their unlawful actions does not warrant the application of qualified good faith immunity because the individual Defendants were never in danger nor was any other persons in the vicinity in danger. Firing at non-threatening detainee is never reasonable.

### SECOND CLAIM FOR RELIEF - - Assault

34. The allegations contained in Paragraphs 17 thru 21 are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading. Furthermore, the claims brought by Plaintiffs under this section only apply to the individual Defendants. Any reference to "Defendant(s)" in this section only applies to the aforementioned Defendant and does not include Defendant City.

35. As a pendent state cause of action, at all times material and relevant herein, the individual Defendants, by acts and/or omissions and under color of state law did then and there by acts/and/or omissions, intentionally, knowingly and/or recklessly cause severe personal injury to Mr. Abernathy through unconsented physical contact with him.

36. Under Texas law, the cause of action for excessive force is simply one for assault and battery. Consequently, Plaintiffs allege that the individual Defendants committed an assault upon Mr. Abernathy when Mr. Abernathy was intentionally, knowingly, and/or recklessly shot. Said assaultive conduct of the individual Defendants was committed intentionally, knowingly, and/or recklessly and was the proximate cause of physical and emotional injuries to Mr. Abernathy. Said injuries were the direct and immediate consequence of Defendants' wrongful acts and a natural and direct result of the assault causing Mr. Abernathy' death.

37. At no time were the individual Defendants privileged to take the action, as force was not necessary. Moreover, the individual Defendants' assault and the shooting of Mr. Abernathy was not objectively reasonable when balancing the amount of force used against the need for the force.

## DAMAGES

38. As a result of the foregoing unlawful and wrongful acts of Defendants, jointly and severally, Plaintiffs have been caused to suffer general damages which include, but are not limited to, the following: both physical and emotional injury, pain and suffering, and emotional and mental distress, and shock, along with severe emotional distress, associated with the death of Mr. Abernathy.

39. Said injuries have caused Plaintiffs to incur special damages which include but are not limited to: funeral and burial expenses and the loss of companionship and/or support.

40. Pursuant to the Civil Rights Attorney's Fees Award Act, 42 U.S.C.S. §1988, a prevailing party in a §1983 case is entitled to recover its attorney's fees. Hence, Plaintiffs further pray for all costs and attorney fees associated with bringing the present case to trial.

41. In addition, Plaintiffs pray for punitive damages against the individual Defendants. Punitive damages are designed to punish and deter persons such as the individual Defendants who have engaged in egregious wrongdoing. Punitive damages may be assessed under §1983 when a

Defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.

**WHEREFORE PREMISES CONSIDERED**, Plaintiffs pray that upon trial upon the merits, Plaintiffs recover compensatory damages against Defendants, jointly and severally; that Plaintiffs also recover punitive damages against the individual Defendants in an amount to punish and/or deter and to make an example of these Defendants in order to prevent similar future conduct; and that Plaintiffs recover against each Defendant all reasonable and necessary attorney's fees, court costs and expenses in regards to the present suit in litigation. Moreover, Plaintiffs pray for all prejudgment and postjudgment interest that can be assessed against the Defendants in the event of recovery; and that Plaintiffs recover against each Defendant any and all other general or specific relief to which they prove themselves justly entitled.

    Respectfully submitted,

    GALE, WILSON & SÁNCHEZ, PLLC
    115 E. Travis, 19th Floor
    San Antonio, Texas 78205
    Telephone: (210)222-8899
    Telecopier: (210)222-9526
    Email: cjgale@gws-law.com

    By: /s/ Christopher J. Gale
        Christopher J. Gale
        Texas Bar No. 00793766
        *Attorneys for Plaintiffs*

### Demand for Jury Trial

Plaintiffs hereby demand trial by jury pursuant to Fed.R.Civ.P. 8(b).

## CERTIFICATE OF SERVICE

I hereby certify that on this the 11th day of August, 2014, the above and foregoing was sent to the following counsel of record by the means indicated below:

| | |
|---|---|
| Mr. Michael Siemer<br>Office of the City Attorney<br>City of San Antonio<br>Litigation Division<br>111 Soledad Street, 10th Floor<br>San Antonio, Texas 78205 | *Via E-File Notification* |
| Mark S. Ralls<br>HOBLITT FERGUSON DARLING, L.L.P.<br>300 Convent Street, Suite 1450<br>San Antonio, Texas 78205 | *Via E-File Notification* |

                                          /s/ Christopher J. Gale
                                          Christopher J. Gale