IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SHAVONDA BAILEY, *AS NEXT FRIEND* OF K. A. AND P. A.; AND VIVIAN LAMPKINS, *AS NEXT FRIEND* OF J. L,; BELINDA CARRANCO, *AS NEXT FRIEND OF* Z.A.; BRANDIE OLIVER, *AS NEXT FRIEND OF* A.O.; and CHRISTINE OWENS, *AS NEXT FRIEND OF* M.O.<br>    Plaintiff(s), | § § § § § § § § § | |
| *v.* | § § | SA-13-CV-00700 |
| CITY OF SAN ANTONIO, TEXAS; OFFICER PRESTON, *Individually*; VIDAL DIAZ, *Individually*; MICHAEL FLETCHER, *Individually*; FRANCISCO GALVAN, *Individually*; MATTHEW FLORES, *Individually*; AUBREY PLAUCHE, *Individually*; MATTHEW QUINTANILLA, *Individually*; ROBERT TAMEZ, Individually; and PAUL TRIGO, Individually<br>    Defendant(s) | § § § § § § § § § § § § § | |

**DEFENDANT, CITY OF SAN ANTONIO'S MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

NOW COMES The City of San Antonio, (hereinafter "Defendant" or "the City"), and pursuant to Rule 56 of the Federal Rules of Civil Procedure, files this, its Motion for Summary Judgment as to the claims brought against it by Plaintiffs, SHAVONDA BAILEY, *as next friend of* K.A., and P.A.; VIVIAN LAMPKINS *as next friend of* J.L.; BELINDA CARRANCO, *as next friend of* Z.A.; BRANDIE OLIVER, *as next friend of* A.O.; and, CHRISTINE OWENS, *as next friend of* M.O. (hereinafter "Plaintiffs"), and in support thereof would respectfully show unto the Court as follows:

1. Defendant would show the Court there is no genuine issue as to any material fact upon which liability can be predicated in this matter on Plaintiff's causes of action against the City of San Antonio pursuant to 42 U.S.C. §1983 under the Fourth Amendment, as well as any pendent state law claims[1] as alleged by Plaintiff, and Defendant is entitled to judgment on the Plaintiff's claims as a matter of law.

## I. PROCEDURAL BACKGROUND

2. On August 2, 2013 Plaintiffs SHAVONDA BAILEY, *as Next Friend of* K.A., and P.A.; and, VIVIAN LAMPKINS *as Next Friend of* J.L. filed suit against the City of San Antonio ("the City"), Officer Nathan Preston ("Preston"), and six John Doe Defendants.[2] Preston filed his original answer on October 4, 2013.[3] After their motion for leave was granted, Plaintiffs filed their first amended original complaint on October 25, 2013.[4] The City filed its original answer to the first amended complaint on November 19, 2013.[5] On December 23, 2013 Defendants Vidal Diaz ("Diaz"), Michael Fletcher ("Fletcher"), Francisco Galvan ("Galvan"), Matthew Flores ("Flores"), Aubrey Plauche ("Plauche"), Matthew Quintanilla ("Quintanilla"), Robert Tamez ("Tamez"), and Paul Trigo ("Trigo") filed their original answer.[6] After the court granted their motion for leave, the Plaintiffs filed their Second Amended Complaint on August 22, 2014 adding BELINDA CARRANCO, *as next friend of* Z. A.; BRANDIE OLIVER, *as next friend of* A.O.; and, CHRISTINE OWENS, *as next friend of* M.O. as Plaintiffs.[7] On September 4, 2014

---

[1] Plaintiffs expressly state that they are not bringing any claims under state law against the City. See Plaintiffs' Second Amended Original Complaint (Doc. #36 at paragraph 34).
[2] Doc. #1.
[3] Doc. #3.
[4] Doc. #7.
[5] Doc. #9.
[6] Doc. #15.
[7] Doc. #36.

the Individual Defendants filed their first amended answer.[8] On September 5, 2014 the City filed its answer to the plaintiffs' second amended original complaint.[9]

##      II.     FACTUAL BACKGROUND[10]

3.     Plaintiffs are the allegedly the minor children of Pierre Abernathy, deceased, all of whom are represented by their respective biological mothers as next friends. Plaintiffs allege that in the early morning hours of August 4, 2011, Pierre Abernathy (hereinafter "Abernathy"), a paranoid schizophrenic, was going to pick up his fiancé from work and encountered San Antonio Police officers following him. Because of past encounters with law enforcement, Plaintiffs allege that Mr. Abernathy feared for his safety and he drove to his mother's house and pulled into his mother's driveway and proceeded to exit his vehicle. Plaintiffs allege that Defendants Preston, Diaz, Fletcher, Flores, Galvan, Plauche, Quintanilla, Tamez and Trigo, all officers of the San Antonio Police Department ("SAPD") chased Mr. Abernathy and began to "taze" him. Plaintiffs allege that the Defendant SAPD officers had Mr. Abernathy in custody with his hands cuffed behind his back and "decided to punish Mr. Abernathy, and released a K-9 unit who bit and mauled Mr. Abernathy as his mother, family, and neighbors watched in horror." Plaintiffs allege that the Defendant SAPD officers "then began to savagely beat Mr. Abernathy, while he lay there defenseless in the fetal position." Plaintiffs allege that the Defendant SAPD officers "were boasting and bragging, encouraging each other saying "yeah get some, yeah get some" while Mr. Abernathy lay motionless." Plaintiffs allege that the SAPD officers "continued beating Mr. Abernathy as if he was a pinata using their fists and batons as well as tazing him as the K-9 unit

---

[8] Doc. #37.
[9] Doc. #38.
[10] The facts set forth in this section are found in Plaintiffs' Second Amended Original Complaint (Doc. #36) unless otherwise specified.

mauled him like his favorite dog treat."[11] Plaintiffs allege that Mr. Abernathy was not violent and he did not resist the officers' requests.[12] Plaintiffs allege that Mr. Abernathy died as a result of the beating.[13]

4. The *actual* facts of the incident do not support Plaintiffs' version of the events that morning. However, for the sake of brevity, and because the factual details of what *actually* occurred that day are largely irrelevant to the City's motion, the City refers the court to the factual account of the event that is set forth in the Motion for Summary Judgment filed by the Defendant officers, and the City relies upon and incorporates same into this motion the same as if set forth verbatim.

5. Attached hereto as Exhibit "A" is the affidavit of Capt. Michael Gorhum, the Commander of SAPD Internal Affairs Unit. In his affidavit he testifies that SAPD's policies and procedures are contained in the SAPD General Manual, the official policy manual of SAPD[14]. All SAPD officers are familiarized with the policies and procedures in the General Manual during their six month initial training at the San Antonio Police Academy, as well as continuing yearly in-service education and update bulletins. He notes that officers are instructed, guided and trained so that they understand these and other procedures of SAPD. Capt. Gorhum testified that SAPD officers are also instructed, guided and trained so that they understand they can only use force necessary to affect an arrest, protect themselves, and/or to protect another. Training records are reviewed yearly to make sure that they are in compliance with Texas State training requirements. All complaints of officer misconduct as well as use of force incidents are

---

[11] Docket #36, pp. 5, 6.
[12] *Id.* at p. 6.
[13] *Id.*
[14] The facts set forth in Paragraph 4 are found in Exhibit "A" unless otherwise specified.

reviewed and all complaints of excessive use of force are investigated and, if warranted, disciplinary action is imposed.

6. General Manual Procedure 501 "Use of Force" provides, in part, that "[o]fficers shall use only the level of force that is necessary to accomplish a lawful police objective. Any time force is used, the officer shall apply a level of force that is reasonable for the situation." [15] Procedure 501 further provides at section 501.03[16]:

> A. The sanctity of human life and individual liberties are immeasurable elements of modern society which vests police officers with the responsibility for the preservation and protection of its paramount values. In the pursuit of this responsibility, officers maintain the understanding the protection of property and apprehension of criminal offenders is subservient to the protection of life, including their own.
>
> B. In the course of discharging their duty, police officers are often confronted with situations requiring some degree of force to be exercised in order to effectively maintain public order and safety. This may be achieved on an ascending scale of the officer's presence, verbal communications, open/empty hands control, physical force, intermediate weapon and deadly force, according to and proportional with the circumstances of the situation. The application of force must be conducted in a manner reasonable and commensurate to achieving a level of control that cannot otherwise be obtained through the use of other alternatives.
>
> C. Although the use of a reasonable amount of force is authorized in appropriate circumstances, such as those involving the protection of the officer or others from bodily harm, officers must be aware unnecessary or excessive force violates Federal Statues, the Texas Penal Code and departmental policy.

Furthermore, SAPD policy requires that officers consider the following factors when assessing the need to use force[17]:

> 1. Is the suspect submitting peacefully or resisting?
> 2. Is the suspect armed?
> 3. What is the nature of the crime?
> 4. Does the suspect have a previous arrest record or history showing violence?
> 5. Number of suspects involved?

---

[15] *See* Exhibit "D" Procedure 501.02 B
[16] *See* Exhibit "D" at 501.03
[17] *See* Exhibit "D" at 501.05 D

6. How much support from other officers is available?

SAPD policy also provides that "officers shall de-escalate their use of force options when a subject's actions indicate that the initial use of force has achieved an acceptable level of compliance by a subject."[18] Finally, Procedure 501 mandates that "[a]ny officer present and observing another officer using force that is clearly beyond that which is reasonable under the circumstances shall, when in a position to do so, safely intercede to prevent the use of such excessive force. Officers shall immediately report these observations to a supervisor."[19]

7. Capt. Gorhum, further, testified in his affidavit that all officers with SAPD are required to be certified by the Texas Commission on Law Enforcement Standards and Education (TCOLE)[20]. TCOLE sets the standards for law enforcement officers in the State of Texas, the standards for screening applicants for police work as well as certification and training standards for police agencies in the State of Texas. SAPD meets or exceeds all TCOLE standards for screening, and training its officers. Training in all law-enforcement matters is required of and/or provided to each SAPD officer in two general categories. Initially, officer-trainees must complete comprehensive training at a basic academy. Thereafter, officers are required to take continuing education classes and training, i.e. "in-service", on an annual basis. All law enforcement issues, including for example, probable cause to arrest, penal code provisions and the constitutional limitations on the use of force, are covered in the training academy. After completion of their training at the police academy, new officers (referred to as probationary officers) continue their training with Field Training Officers (FTO's) who provide on-the-job training to the probationary officers for a period of six (6) months. During this time the

---

[18] *See* Exhibit "D" at 501.05 F(1)
[19] *See* Exhibit "D" at 501.05 G

probationary officers receive hands-on training in all aspects of police work with an emphasis on the policies and procedures of SAPD as set forth in the General Manual. Following academy training and the completion of their probationary period with an FTO, SAPD officers continue their training and receive updates as to changes in the law, SAPD policies and/or proper techniques throughout their careers during mandatory annual courses known as "In Service Training". SAPD officers are also continually updated and refreshed on a broad range of law enforcement issues and on the policies and procedures of the San Antonio Police Department on an informal basis - for example during pre-shift meetings and in conferences prior to initiating law-enforcement activities.

8. The training required of the officers of the San Antonio Police Department far exceeds the minimum requirements imposed by the State of Texas. Minimum peace officer training is mandated by TCOLE which establishes the criteria for police officer candidate licensure and for incumbent officers to maintain their law enforcement license. TCOLE, through legislative authority can suspend and/or revoke a police officer's license for violation of law. All officers with the San Antonio Police Department are required to be certified by TCOLE.

9. The state-mandated minimum officer training standard is 618 hours for the Basic Peace Officer certification. SAPD's training academy requirements incorporate the substance and time requirements of TCOLE Basic Peace Officer certification and expands upon them. SAPD's basic training requirements exceed those of TCOLE by at least 600 hours. TCOLE requires peace officers to receive 40 hours of post-academy law-enforcement training every two (2) years. The San Antonio Police Department doubles this standard by requiring its officers to take forty

---

[20] The facts set forth in paragraphs 7 through 9 are found in Exhibit "A" unless otherwise specified.

(40) hours of post-academy law enforcement training on an annual basis, except for the first year after graduating from the academy.

10. The City of San Antonio, by and through its Police Department, does not condone or permit the use of excessive force. All SAPD officers are trained regarding SAPD policies and procedures including Procedure 501 "Use of Force".[21] Capt. Gorhum notes that the City is not aware of any widespread practice of SAPD officers violating people's rights and that SAPD has established a division (Internal Affairs) devoted to investigating allegations of misconduct against SAPD officers.[22] After Internal Affairs investigates a complaint the matter is then forwarded to the Chief's Advisory Action Board which reviews the matter and then makes a recommendation as to whether discipline is warranted and forwards its findings to the Chief of Police for final disposition.[23]

11. Further, SAPD has established the Internal Affairs Unit to investigate alleged violations by SAPD officers of department policies, procedures, rules and regulations.[24] Internal Affairs accepts complaints against officers by both citizens and sworn personnel.[25] Internal Affairs investigates such complaints and submits the findings of the investigation to the Chief's Advisory Action Board which is comprised of both citizens and sworn personnel.[26] The Board reviews the cases and makes recommendations as to whether or not the complaint is founded and if so, recommends a punishment.[27] These recommendations are then forwarded to the Chief of

---

[21] *See* Exhibit "D"
[22] *See* Exhibit "A".
[23] *See* id.
[24] *See* Exhibit "A"
[25] *Id.*
[26] *Id.*
[27] *Id.*

Police for further action, to include the issuance of discipline, as necessary.[28] In this manner, the City of San Antonio upholds its policies and procedures.[29] Additionally, if an officer is deemed to have violated the law, the department undertakes to investigate such alleged violations and to forward them for prosecution if warranted.[30] Every incident or allegation is taken on its own merit.[31] If it is determined that the complaint is sustained, disciplinary action may be implemented by the Chief of Police.[32] The policies and procedures of the Internal Affairs Unit are summarized in Procedure 303 "Disciplinary Procedures"[33] of the San Antonio Police Department General Manual.[34]

### III. SUMMARY JUDGMENT EVIDENCE

12. The attached exhibits support the Defendant's Motion for Summary Judgment, and are incorporated by reference the same as if set forth at length and copied verbatim in their entirety in this dispositive motion. Defendant submits the following summary judgment evidence:

> Exhibit "A"  Affidavit of Captain Michael Gorhum
>
> Exhibit "B"  General Manual Procedure 303 (Disciplinary Process)
>
> Exhibit "C"  General Manual Procedure 325 (Training and Career Development)
>
> Exhibit "D"  General Manual Procedure 501 (Use of Force);

### IV. PLAINTIFF'S CLAIMS[35]

13. Plaintiffs, assert a cause of action against the City of San Antonio under 42 U.S.C.§1983. Plaintiffs base their claim under §1983 upon excessive force under the 4th Amendment to the

---

[28] *Id.*
[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] *Id*.
[33] *See* Exhibit "B"
[34] *See* Exhibit "A"
[35] *See* Plaintiff's Second Amended Original Complaint (Doc. #36).

U.S. Constitution and alleges that the City is liable by virtue of (1) a policy, practice, custom or procedure permitting excessive force and/or (2) a failure to supervise, discipline and/or train its police officers.

## V. GROUNDS FOR SUMMARY JUDGMENT

14. Defendant moves for Summary Judgment as to all of Plaintiff's claims and causes of action on the following grounds:

   A. The Summary Judgment evidence shows that the policies, practices, customs and procedures of the City of San Antonio and/or the SAPD were not the moving force behind any alleged violation of Decedent's constitutional rights.

      1. The policies and procedures of the SAPD permit only the amount of force necessary to effect a lawful police objective.

      2. SAPD properly trains, supervises and disciplines its police officers and does not ratify, condone nor permit any use of excessive force or violations of an individual's constitutional rights.

## VI. SUMMARY JUDGMENT STANDARD

15. Summary judgment should be granted if the record, taken as a whole, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[36] The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[37] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[38]

---

[36] Fed. R. Civ. P. 56(c); *N.Y. Life Ins. Co. v. Travelers Ins. Co.,* 92 F.3d 336, 338 (5th Cir.1996).
[37] *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
[38] *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc) (quoting *Celotex,* 477 U.S. at 323-25).

16. If the moving party meets this initial burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.[39] The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.[40] Instead, the nonmovant must identify specific evidence in the record and articulate precisely how that evidence supports his or her claims.[41] Where the nonmovant fails to set forth specific facts, by affidavits or otherwise, to show that there is a genuine issue for trial, summary judgment is appropriate.[42] In *Scott v. Harris*, the United States Supreme Court clarified the standard of review in the context of summary judgment.

> As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). <u>When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.</u>[43]

---

[39] *Wallace v. Tex. Tech Univ.,* 80 F.3d 1042, 1046-47 (5th Cir.1996).
[40] *Little,* 37 F.3d at 1075; *Wallace,* 80 F.3d at 1047.
[41] *Ragas v. Tenn. Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir.1998).
[42] *Topalian v. Ehrman,* 954 F.2d 1125, 1132 (5th Cir.1992).
[43] 550 U.S. 372, 380 (2007)(emphasis added).

## VII. DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT AS TO PLAINTIFF'S MUNICIPAL LIABILITY CLAIMS

**Municipal Liability under 42 U.S.C. §1983**

17. Although municipalities are considered "persons" who may be sued directly under 42 U.S.C. § 1983, "a municipality cannot be held vicariously liable for the constitutional torts of its employees or agents."[44] "A municipality is liable only for acts directly attributable to it through some official action or imprimatur."[45] To establish municipal liability under §1983, a plaintiff must plead and prove three elements: "1) a policymaker; 2) an official policy; and 3) a violation of constitutional rights whose moving force is the policy or custom."[46] A local government may be sued under §1983 "'if it is alleged to have caused a constitutional tort through a policy statement, ordinance, regulations, or decision officially adopted and promulgated by that body's officers.'"[47] "Alternatively, official policy is a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy."[48] Importantly, "[i]t is not enough that an illegal custom exist; municipal policymakers, who are the persons capable of subjecting a municipality to liability, must be chargeable with awareness of the custom."[49] "A customary policy consists of actions that have occurred for so long and with

---

[44] *Monell v. Dep't of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Gros v. City of Grand Prairie,* 181 F.3d 613, 615 (5th Cir.1999) (citing *Monell,* 436 U.S. at 694, 98 S.Ct. 2018).
[45] *Valle v. City of Houston,* 613 F.3d 536, 541 (5th Cir.2010).
[46] *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir.2001).
[47] *Zarnow v. City of Wichita Falls,* 614 F.3d 161, 166 (5th Cir.2010) (quoting *City of St. Louis v. Praprotnik,* 485 U.S. 112, 121, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (plurality opinion)).
[48] *Brown v. Bryan County,* 219 F.3d 450, 457 (5th Cir. 2000) (citation omitted).
[49] *Milam v. City of San Antonio,* 113 Fed.Appx. 622, 626 n. 3 (5th Cir.2004).

such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct."[50]

**Policies of SAPD**

18.  As noted above, the official polices of the SAPD are contained within the General Manual. Procedure 501 "Use of Force" specifically addresses the amount of force which may be used by officers and limits officers to only that amount of force necessary to achieve a lawful police objective[51]. Obviously, SAPD policy which limits the use of any type of force to the amount necessary to achieve a lawful police objective is a constitutionally sound policy. Furthermore, General Manual Procedure 501 provides a "matrix" of force options that may be used in response to a subject's actions and behaviors by SAPD officers.[52] This "matrix" is designed to assist officers in understanding how force can escalate and provides non-lethal options to officers who find themselves in situations in which force must be used.[53] Notably, intermediate weapons, such as batons and "tasers" (which are called "Electronic Control Devices" or "ECD's" by the General Manual) are appropriate only in situations in which officers or third parties are in danger of imminent assault involving bodily injury.[54] Deadly force is for use only when a subject's behavior leads an officer to believe that serious bodily injury or death is an imminent consequence of the subject's actions.[55] SAPD policy provides that "officers shall de-escalate their use of force options when a subject's actions indicate that the initial use of force

---

[50] *Zarnow,* 614 F.3d at 169 (citing *Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir.1984)).
[51] *See* Exhibit "D".
[52] *Id.* at 501.05
[53] *Id.*
[54] *Id.*
[55] Id.

has achieved an acceptable level of compliance by a subject."[56] Finally, Procedure 501 mandates that "[a]ny officer present and observing another officer using force that is clearly beyond that which is reasonable under the circumstances shall, when in a position to do so, safely intercede to prevent the use of such excessive force. Officers shall immediately report these observations to a supervisor."[57] As such, the well established policies of SAPD are not unconstitutional nor were such policies the moving force behind any alleged use of excessive force and the Court should, therefore, grant the City's Motion for Summary Judgment.

19.    Capt. Gorhum's Affidavit also establishes that there is no widespread practice of violating individual's constitutional rights.[58] Capt. Gorhum notes that the City is not aware of any widespread practice of SAPD officers violating people's rights and that SAPD has established a division (Internal Affairs) devoted to investigating allegations of misconduct against SAPD officers.[59] After Internal Affairs investigates a complaint the matter is then forwarded to the Chief's Advisory Action Board which reviews the matter and then makes a recommendation as to whether discipline is warranted and forwards its findings to the Chief of Police for final disposition.[60] Thus, not only is there not a widespread practice of violating people's constitutional rights, all such allegations are thoroughly investigated and, if warranted, punished by SAPD.

---

[56] See Exhibit "D" at 501.05 F(1)
[57] See Exhibit "D" at 501.05 G
[58] See Exhibit "A"
[59] See id.
[60] See id.

**Training, Supervision and Discipline**

20.     In order for liability to attach based on a claim of inadequate training, Plaintiff must allege with specificity how a particular training program is defective.[61] Plaintiff has not done so in this case, nor has plaintiff adduced evidence of inadequate training. Moreover, the Fifth Circuit has held "that if the training of police officers meets state standards, there can be no cause of action for a failure to train absent a showing that 'this legal minimum of training was inadequate to enable [the officers] to deal with the 'usual and recurring situations' " they would likely face.[62] The undisputed summary judgment evidence establishes that SAPD training exceeds state requirements for certification. Capt. Gorhum testifies in his affidavit that SAPD's training curriculum meets, and in most cases, exceeds the standards required by the Texas Commission on Law Enforcement Officers Standards and Education (TCOLE).[63] All SAPD officers must be certified by TCOLE and must maintain their certification to remain SAPD officers.[64] Plaintiff has presented no evidence that SAPD's training requirements fail to meet state standards, or that the training was somehow deficient or inadequate and the Court should, therefore, grant the City's Motion for Summary Judgment.

21.     Likewise, SAPD General Manual Procedure 303 – "Disciplinary Procedures" sets forth in detail the manner in which SAPD supervises and disciplines its police officers.[65] Procedure 303 provides, in pertinent part:

   A.   The Department is accountable for all official acts of its employees. Therefore, the Department holds its members to a high standard of conduct and discipline in

---

[61] *Benavides v. City of Wilson,* 955 F.2d 968, 973 (5th Cir.1992).
[62] *O'Neal v. City of San Antonio,* 344 Fed. App'x 885, 888 (5th Cir.2009) (quoting *Benavides,* 955 F.2d at 973).
[63] Exhibit "A"
[64] Exhibit "A"
[65] Exhibit "B"

order to preserve an essential relationship of trust and confidence with the community they serve.

B. Furthermore, the Department adheres to and practices progressive discipline. This allows for a range of sanctions that take into account the circumstances of individual matters while ensuring that discipline is commensurate with continued misconduct.

C. To achieve the desired degree of effectiveness, disciplinary procedures address considerations and expectations from the following three perspectives:

1. Community or external concerns: An open and positive relationship with the citizens of this community must be preserved. Consequently, the Department accepts all complaints, regardless of form, source, or substance, and initiates investigative action appropriate to the seriousness of the complaint.

2. Departmental or internal concerns: A consistent and fair disciplinary system supports an effective operational environment. The Department provides corrective action for a member who demonstrates a need for behavioral correction and commends proper conduct and judgment.

3. Employee concerns: Members should have a reasonable expectation they may exercise prudent judgment in a fair, lawful, and impartial manner while in the proper discharge of their duties and an expeditious and equitable process of disciplinary review will evaluate their actions.

D. The Internal Affairs Unit shall coordinate all investigations of alleged non-criminal misconduct by sworn members of the Department in accordance with this procedure.

E. The Chief of Police shall determine which unit or Department member shall investigate allegations of criminal misconduct made against a member of the Department.

22. Furthermore, as noted in the affidavit of Capt. Gorhum, the SAPD has established the Internal Affairs Unit to investigate alleged violations of department policies, procedures, rules and regulations.[66] The Internal Affairs Unit investigates the administrative complaints and submits the findings of the investigation to the Chief's Advisory Action Board which is

---

[66] Exhibit "A"

comprised of both citizens and sworn personnel.[67] The board reviews the cases and makes recommendations as to whether or not the complaint is founded and if so, recommends a punishment.[68] These recommendations are then forwarded to the Chief of Police for further action, to include the issuance of discipline, as necessary.[69] In this manner, the City of San Antonio upholds its policies and procedures.[70] Additionally, if an officer is deemed to have violated the law, SAPD undertakes to investigate such alleged violations and to forward them for prosecution if warranted.[71] If it is determined that the complaint is sustained, disciplinary action may be implemented by the Chief of Police.[72] The policies and procedures of the Internal Affairs Unit are summarized in Procedure 303 "Disciplinary Procedures" of the San Antonio Police Department General Manual.[73] Thus, SAPD does have adequate policies in place to supervise and Discipline its officers. Plaintiff has produced no evidence to the contrary. Accordingly, the Court should grant the City's Motion for Summary Judgment because the City does adequately supervise and discipline its officers.

WHEREFORE PREMISES CONSIDERED, Defendant City of San Antonio respectfully requests the Court grant his Motion for Summary Judgment and dismiss, with prejudice to the re-filing of same, all of Plaintiff's claims against him, and for such other and further relief, both general and special, at law or in equity, to which Defendant may be justly entitled.

---

[67] *Id.*
[68] *Id.*
[69] *Id.*
[70] *Id*.
[71] *Id.*
[72] *Id.*
[73] Exhibit "B"

Respectfully Submitted,

CITY OF SAN ANTONIO
Martha G. Sepeda, Acting City Attorney
SBN: 13143100
Office of the City Attorney
Litigation Division
111 Soledad St., 10th Floor
San Antonio, TX 78205

_____
Michael D. Siemer
Assistant City Attorney
Bar No: 18343670
(210) 207-8784/ (210) 207-4357 Fax
Michael.Siemer@sanantonio.gov
*Attorney for Defendant, City of San Antonio*

CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system that will send notification of such filing to the following on March 2, 2015:

N. Mark Ralls
Hoblit Ferguson Darling LLP
300 Convent St., Suite 1450
San Antonio, Texas 78205

Christopher J. Gale
Gale Law Group, PLLC
P.O.Box 2591
Corpus Christi, Texas 78403

_____
MICHAEL D. SIEMER