

EXHIBIT "B"

# SAN ANTONIO POLICE DEPARTMENT
## GENERAL MANUAL
### *Procedure 303 – Disciplinary Procedures*

| Office with Primary Responsibility: | COP | Effective Date:<br>Prior Revision Date: | March 01, 2011<br>July 31, 2010 |
|---|---|---|---|
| Office(s) with Secondary Responsibilities: | PSC, PNC, TSC, FTC, IDC, SSO | Number of Pages: | 18 |
| Forms Referenced in Procedure: | SAPD Form #61-LF,<br>SAPD Form #200 OR | Related Procedures: | 402 |

**.01 *INTRODUCTION***

A. This procedure establishes a process to provide for the non-criminal investigation and discipline, when necessary, of sworn members for alleged or suspected violations of department rules, regulations, policies, or procedures, which may regulate the conduct of sworn members.

B. When a complaint focuses on a civilian member, the non-criminal investigation and discipline, when necessary, is determined by the civilian member's Division Commander or in accordance with any applicable administrative directives of the City.

C. This procedure does not supersede any criminal investigation for alleged violations of criminal laws or statutes by members of this Department.

**.02 *POLICY***

A. The Department is accountable for all official acts of its employees. Therefore, the Department holds its members to a high standard of conduct and discipline in order to preserve an essential relationship of trust and confidence with the community they serve.

B. To achieve the desired degree of effectiveness, disciplinary procedures address considerations and expectations from the following three perspectives:

1. Community or external concerns: An open and positive relationship with the citizens of this community must be preserved. Consequently, the Department accepts all complaints, regardless of form, source, or substance, and initiates investigative action appropriate to the seriousness of the complaint.

2. Departmental or internal concerns: A consistent and fair disciplinary system supports an effective operational environment. The Department provides corrective action for a member who demonstrates a need for behavioral correction and commends proper conduct and judgment.

3. Employee concerns: Members should have a reasonable expectation they may exercise prudent judgment in a fair, lawful, and impartial manner while in the proper discharge of their duties and an expeditious and equitable process of disciplinary review will evaluate their actions.

C. The Internal Affairs Unit shall coordinate all investigations of alleged non-criminal misconduct by sworn members of the Department in accordance with this procedure.

D. The Chief of Police shall determine which unit or Department member shall investigate allegations of criminal misconduct made against a member of the Department.

**.03 *LINE COMPLAINTS***

A. Line complaints generally constitute disciplinary matters limited to and involving a minor variance from the routine activities and responsibilities of the sworn member in question.

 

SAN ANTONIO
POLICE

B. Line complaints are subdivided as follows:

1. Line Supervisory "Type A" Complaint - The complainant requests contact by the sworn member's supervisor;

2. Line Supervisory "Type B" Complaint - The complainant does not wish to be contacted by a supervisor but relates a potentially substantive problem or relates only nonspecific or general information.

C. The sworn member's immediate supervisor initially addresses line complaints, generally resulting in complainant satisfaction from the supervisor's initial contact. When appropriate, the Section Commander, with concurrence from the Division Commander, addresses the sworn member's behavior with counseling, a written reprimand, or a suspension of up to three calendar days. (Anything less than a one (1) day suspension is not considered discipline.)

1. All line complaints shall be investigated by the officer's chain of command within twenty-one (21) calendar days from the date of the written complaint.

   a. The investigation shall be confined strictly to the complaints detailed in the complaint investigation packet.

   b. If the member does not agree with the contemplated disciplinary action within five (5) calendar days, the case will be forwarded to the Internal Affairs Unit for investigation.

   c. Complaints investigated through the chain of command do not entitle the officer to have an attorney present during interviews with their commanding officer.

   d. During the five (5) calendar day's time period nothing prohibits an officer from seeking advice from an attorney or an Association representative.

2. If the sworn member is the rank of Captain or above, or has no Captain in their chain of command, the officer's Division Commander, Bureau Commander or the Chief of Police or his designee as appropriate, will investigate the complaint.

D. All line complaint disposition reports shall be forwarded to the Internal Affairs Unit for review and disposition.

## .04 *FORMAL COMPLAINTS*

A. Formal complaints generally constitute matters involving conduct that exhibits a significant variance from behavioral expectations established through formal training, departmental rules, regulations, policies, or procedures which regulate a sworn member's conduct.

B. Formal complaints include, but are not limited to, the following:

1. Activities that deal with significant behavioral infractions;

2. Any conduct that if proven would constitute a crime;

3. Any conduct that exhibits the potential to require stringent disciplinary action in the form of a suspension that exceeds three (3) calendar days;

4. Any allegation of harassment/discrimination;

5. Any allegation of racial profiling;

6. Any allegation of unnecessary or excessive force; or

7. Any other incident that may require formal disciplinary proceedings in order to be properly resolved.

C. Sworn members who receive written complaint notification of a formal complaint from the Internal Affairs Unit may request the complaint be submitted to the expedited disciplinary track method.

1. The request must be made in writing to the Office of Chief with a copy of the formal complaint notification attached.

2. Both the sworn member and the Chief must agree to submit the matter to the expedited disciplinary track for an expedited disciplinary finding.

3. Any disciplinary action must be agreed upon by the sworn member and the Chief, and must be enacted within thirty (30) calendar days of the agreement.

D. A suspension agreed to by a member may not be appealed or altered by the Civil Service Commission, an arbitrator, or any court.

E. In no event can the expedited disciplinary track be requested within sixty (60) calendar days of the expiration of the complaint's one-hundred and eighty (180) calendar day timeline in Chapter 143 of the Local Government Code.

F. The San Antonio Police Department's Complaint Matrix shall be used as a guide when addressing disciplinary action.

**.05 *SERVICE COMPLAINTS***

A. Service complaints constitute citizen dissatisfaction with police services for reasons other than complaints of officer misconduct. Service complaints include, but are not limited to the following:

1. Call response times – Not due to an officer's negligence;

2. Handling of a civil matter – Due to Department policy or civil law;

3. Discretionary call screening;

4. Unavailability or delay of other police services;

5. Any other complaint that does not violate policy or procedure or involve officer misconduct.

B. Supervisors receiving service complaints from citizens shall document the complaint to include complainant contact information, the nature of the complaint, and details specific to the incident that may assist in addressing the dissatisfaction. This documentation shall be forwarded directly to the Internal Affairs Unit on written or electronic correspondence. Supervisors should communicate to citizens making service complaints that their concerns will be documented with the intent of providing feedback on Department policy.

**.06 *PARTIES TO A COMPLAINT (COMPLAINANTS)***

A. All complaints of alleged misconduct by sworn members, except complaints initiated by the Department, must identify a principal complainant or aggrieved party from outside the Department.

A. Complaints of alleged misconduct by sworn members that are initiated from within the Department shall list the "Administration" as the complainant.

**.07 *COMPLAINT PROCESSING***

A. The Department receives complaints in a variety of forms and from a number of sources.




B. Members of the Department shall make every effort to ensure prompt and courteous responses or referrals of any complaint, regardless of the circumstances.

C. Referring Complaints

1. Copies of all complaints received or handled by members of the Department shall be forwarded to the Internal Affairs Unit.

2. The initial receipt of a complaint shall be processed as follows:

a. Personal Appearance: A member who receives a complaint through personal contact shall direct the complainant as follows:

(1) To the supervisor of the officer who is the subject of the complaint; or

(2) If the officer's supervisor is unavailable, to the nearest available supervisor.

b. Telephonic: A member who receives a complaint by telephone shall forward the complainant as follows:

(1) To the supervisor of the officer who is the subject of the complaint, if readily available, or;

(2) To the Communications Unit Supervisor who shall determine the availability of a supervisor in the subject officer's chain of command and dispatch the supervisor to contact the complainant. If the identity of the subject officer is unavailable, any supervisor from the Patrol Division is dispatched to contact the complainant.

(3) To the Internal Affairs Unit during business hours, 0800-1800 hours.

c. Correspondence: A member who receives a written complaint shall route the complaint to his immediate supervisor who shall handle in accordance with this policy.

**.08 *COMPLAINT INVESTIGATION RESPONSIBILITIES***

A. Each individual officer must realize and accept the responsibility of confidentiality in order to avoid compromising the integrity of the disciplinary process. Officers shall not discuss details of any complaint with persons outside of the disciplinary process.

B. Supervisory Officers

1. When supervisory officers receive complaints from the Internal Affairs Unit, they shall initiate action appropriate to the type of complaints received, line, or formal complaints.

2. Supervisory officers handling line supervisory "Type A or B" complaints shall:

a. Type A - Contact and interview the complainant in accordance with Section .09;

b. Type B – Although the complainant does not wish to be contacted, the supervisor shall attempt to contact and encourage feedback regarding the Departmental action taken by utilizing the following standardized statement and question:

(1) Statement: it is the policy of our Department to contact you regarding your complaint to let you know how your complaint was resolved,

(2) Question: How would you like to be contacted?




c. Interview the subject officers of the complaints in accordance with Section .09;

d. Evaluate the information and address complaints that may require minor disciplinary action;

e. Prepare reports upon disposition of the complaint which include the information provided by the complainants, the sworn members, and supervisory evaluation of the complaints, including the methods in which complaints were addressed; and

f. Forward the line complaint disposition reports, together with any other pertinent information, through their chain of command to their Section Commanders or Unit Directors.

3. Supervisory officers addressing formal complaints shall:

a. Immediately notify the Section Commanders or Unit Directors of any cases where an officer is involved in allegations of suspected criminal activity;

b. Contact and interview the complainants in accordance with Section .09;

c. Refer the complainants to the Internal Affairs Unit to initiate formal complaints;

d. Interview and obtain written reports from the subject officer in accordance with Section .09;

e. Obtain necessary information, which assists in the evaluation of the complaints;

f. Prepare preliminary complaint investigation packets including all the information provided by the complainants, the sworn members' reports, and the supervisors' reports;

g. Supervisors will not enumerate or make recommendations as to the specific rule, regulation, policy, or procedure violated, nor will they make recommendations as to punishment. Supervisors will only recommend either no disciplinary action is necessary or the complaint should be forwarded to the Internal Affairs Unit for further investigation; and;

h. Route the preliminary complaint investigation packets through the chain of command to their section commanders or unit directors.

C. Section Commanders/Unit Directors

1. Section commanders or unit directors receiving complaints shall assign supervisory officers to investigate the complaints.

2. Section commanders and unit directors receiving disposition reports on line complaints shall:

a. Review and evaluate the supervisors' disposition of line complaint; and

b. Implement disciplinary action, when necessary, up to a three (3) day suspension (with concurrence of the division commander) and;

c. Forward the line complaint disposition reports to the Internal Affairs Unit through their chain of command.

3. Section commanders receiving complaint investigation packets on formal complaints shall:

a. Review and evaluate the supervisor's preliminary complaint investigation packets;

 

b. Forward the preliminary complaint investigation packets, together with their recommendations, to the division commander;

c. Upon receiving concurrence from the ranking officer on duty, temporarily relieve from duty a sworn member accused of serious misconduct or suspected criminal activity; and

d. Immediately notify the division commander and the Internal Affairs Unit of such action.

D. Division Commanders

1. Division commanders shall maintain a confidential disciplinary log strictly for the purpose of ensuring timely disposition of complaints against sworn members.

2. Division commander receiving complaints from the Internal Affairs Unit shall assign Section Commanders or Unit Directors to investigate the complaints.

3. Division Commanders receiving line complaint disposition reports shall review the reports and recommendations, and based on the merits, substance, and gravity of the case:

   a. Request further preliminary investigation, if necessary;

   b. Concur with recommended disciplinary action, when necessary, up to a three (3) day suspension;

   c. Forward the line complaint disposition reports to the Internal Affairs Unit.

4. Division commanders receiving complaint investigation packets concerning formal complaints shall review the contents and recommendations, and based on the same criteria mentioned in the preceding paragraph:

   a. Request further preliminary investigation, if necessary, under exigent circumstances; and

   b. Forward the formal complaint investigation packets to the Internal Affairs Unit.

E. Internal Affairs Unit

1. The Internal Affairs Unit shall receive line complaint disposition reports and formal complaint investigation packets from division commanders.

2. The Internal Affairs Unit shall investigate formal complaints of sworn member misconduct and present the findings to the Chief's Advisory Action Board.

   a. The Internal Affairs Unit shall send Formal Complaint Notices to officers who become the subject of a formal complaint.

   b. The Internal Affairs Unit shall send Deactivation Notices to officers who's Formal Complaints have been dismissed for cause.

3. Officers under investigation shall be informed forty-eight (48) hours prior to being interrogated or asked to otherwise respond to an investigation of the general nature of the investigation and shall be provided with sufficient information to be reasonably apprised of the allegations.

4. Officers shall be allowed to review, but not copy verbatim or photocopy, any information as listed in the current Collective Bargaining Agreement.

EXHIBIT "B"

SAN ANTONIO POLICE DEPARTMENT
GENERAL MANUAL

*Procedure 303 – Disciplinary Procedures*

5. No part of the information provided to the officer for review may be reproduced, transmitted in any form by any means, electronic, or mechanical, including photocopying, recording or by any information storage and retrieval system. Officers shall not release the provided information to any person other than their attorney or representative.

F. Homicide Unit

1. Shall investigate police vehicle crashes; and

2. Shall present findings of investigations to the Chief's City Vehicle Accident Advisory Action Board.

G. Police Legal Advisor

1. The Police Legal Advisor shall review disciplinary cases investigated by the Internal Affairs Unit prior to their submission to the Chief's Advisory Action Board; and

2. Functions in an advisory capacity to the Chief's Advisory Action Board and Chief's City Vehicle Accident Advisory Action Board for the purpose of legal interpretation of any source which regulates a sworn member's conduct.

H. The Chief of Police

1. Shall review the Chief's Advisory Action Board and Chief's City Vehicle Accident Advisory Action Board recommendations for discipline and implements such action as he deems appropriate in each individual case; or

2. May implement, at his discretion, immediate administrative or disciplinary action without the Chief's Advisory Action Board or Chief's City Vehicle Accident Advisory Action Board participation and has ultimate discretion to decide whether discipline should be implemented against a sworn member.

**.09 *COMPLAINT INTERVIEWS***

A. Supervisory officers who conduct formal or line complaint interviews with complainants or witnesses adhere to the following process:

1. The interviews shall occur at a time and place reasonable under the circumstances;

2. Complainants shall be advised the Department may not implement formal disciplinary actions against sworn members without signed, sworn complaints, although oral complaints may receive supervisory review appropriate to the allegations; and

3. Written statements shall be taken only by supervisory officers assigned to the Internal Affairs Unit.

B. Supervisory officers who conduct formal or line complaint interviews with sworn members under investigation for any form of alleged non-criminal misconduct adhere to the following process:

1. The interviews shall occur at a time and place reasonable under the circumstances;

2. A sworn member may, at his option, request a supervisory officer accompany him to a complaint interview, if the interview is conducted by the Internal Affairs Unit. This request is not binding on the supervisory officer;

3. A sworn member who is subjected to an interview and asked to write a report by a supervisory officer in the course of a non-criminal complaint investigation must submit a report immediately upon request. The report shall be written on SAPD Form #200-OR, *Officer's Response to a Complaint*, and submitted to the supervisory officer.

General Manual Procedures – Section 300 *Administrative Procedures* Page 7 of 18 Effective Date: March 01, 2011

COSA MSJ 000012




C. A sworn member of the Internal Affairs Unit holding the rank of sergeant or above, when conducting a complaint interview with a sworn member, may request, or order if necessary, a sworn member of any rank to:

1. Submit a written report;

2. Answer interrogatories;

3. Provide physical evidence; or

4. Otherwise cooperate in any manner with Internal Affairs Unit personnel during an investigation.

**.10 *POLYGRAPH USAGES***

A. The Department considers the polygraph a useful investigative resource which may be used as an administrative tool.

1. When the introduction of the polygraph into an investigation of a citizen's complaint appears necessary, the Department will first examine the complainant.

2. A licensed examiner administers the polygraph test to the sworn member only when the complainant's results indicate truthfulness.

   a. A non-member administers the polygraph examination to a sworn member to prevent any perception of bias; and

   b. To avoid any undue embarrassment to an officer or the Department, the polygraph examination shall not be administered to an officer while in uniform.

B. The Department uses polygraph examination results as follows:

1. The Chief's Advisory Action Board and Chief of Police review the complainant's polygraph examination results; and

2. Only the Chief of Police reviews the sworn member's polygraph examination results.

**.11 *COMPLAINT DOCUMENTATION RETENTION***

A. Individual Officers

1. An officer may maintain personal records involving matters of potential disciplinary action which involve him.

2. The only official disciplinary documentation permitted in any officer’s possession is that which the officer personally prepared.

B. Supervisory Officers

1. Many supervisory officers maintain informal notes regarding the activity of their personnel. However, the personal retention of any forms, reports, or official documentation regarding formal or informal disciplinary investigations of direct subordinates is prohibited.

2. Supervisory officers involved in disciplinary investigations shall forward all documentation under seal to the Internal Affairs Unit through their chain of command at the earliest possible time.

 

### .12 *CHIEF'S ADVISORY ACTION BOARD*

A. The Chief's Advisory Action Board, hereafter referred to as the Board, means the combined Citizen Advisory Action Board and Police Advisory Action Board.

1. The Citizen Advisory Action Board:

a. Consists of members selected in accordance with the current Collective Bargaining Agreement;

b. A quorum consists of three members (provided there are at least six (6) active/participating appointed members);

c. Each member has one (1) vote; and

d. Citizen members must be present to hear the following types of cases:

(1) Cases involving the use of force, bodily injury, and unlawful search and seizure; and

(2) Any case in which the officer who is the subject of a complaint or a complainant requests citizen member participation, if it is reasonably possible based on the workload and availability of the citizen members.

e. Cases not meeting the above criteria may be heard without citizen member's participation.

2. The Police Advisory Action Board:

a. Consists of sworn members as specified in the current Collective Bargaining Agreement.

b. Membership is open to any officer who has completed his initial probationary period and has not incurred a suspension during the previous twelve months.

c. A quorum consists of five (5) members.

d. Each sworn member has one vote.

e. All sworn members vote regardless of the rank of the respondent.

f. A sworn member excuses his participation in any case in which he is a respondent, has participated in, or has witnessed.

g. The Chief of Police may allow the following to attend the Chief's Advisory Action Board meeting:

(1) A San Antonio Police Officers' Association representative;

(2) The Police Legal Advisor; and

(3) Internal Affairs Unit representatives.

B. The Chief's Advisory Action Board is designed to deal with disciplinary problems as equitably as possible in pursuing the achievement of the following four objectives:

1. Correct the behavior of an individual sworn member who is not in conformance with departmental standards or objectives;

 

SAN ANTONIO
POLICE

2. Instill a preventive affect for any other sworn member who may be engaged in or contemplating similar misconduct;

3. Demonstrate that compliance with departmental mandates is uniformly required of each sworn member; and

4. Promote making the disciplinary process transparent and stress the importance of community involvement.

C. All members of the Chief's Advisory Action Board shall sign a pledge of confidentiality agreeing to maintain the right of privacy for the accused sworn member and hold in confidence all allegations, facts, testimony, and evidence brought before the Board.

D. The effectiveness of the Board requires maintaining the integrity of the process, which is contingent on the following responsibilities.

1. The Board Chairman:

a. Serves as the custodian of all information concerning disciplinary cases that the Board reviews;

b. Confines reviews of case jackets or confidential material to a designated area;

c. Provides orientation for new Board members;

d. Reviews published agendas at least seven days prior to each meeting; and

e. Ensures proper rules of order are followed at meetings.

2. Each Board Member:

a. Protects the rights of the sworn member whose conduct is the subject of review by maintaining confidentiality relating to any discussions, correspondences, or proceedings; and

b. Avoids any bias in the fulfillment of their obligations.

E. Cases presented to the Board for consideration are derived from the following sources:

1. The Internal Affairs Unit as a formal complaint; or

2. The Chief of Police, who may wish the Board consider a matter.

**.13 *CHIEF'S ADVISORY ACTION BOARD PROCEDURES***

A. Although a need to adhere to the following disciplinary hearing procedures exists, the Chief of Police reserves the right to exercise administrative discretion in the event of exceptional circumstances falling outside the limit, purpose, or scope of this process.

B. Board Procedures

1. The Chairman makes a declaratory announcement about security for the protection of each respondent's privacy.

2. The Chairman announces each case prepared for review by the Board. The Chairman may reset a case at the respondent's request, if sufficient cause exists.

3. An Internal Affairs Unit representative outlines misconduct cases.

 

4. The Board may then ask questions of the Internal Affairs Unit representative presenting the brief.

5. The respondent is allowed the opportunity to speak before the Board by the Board Chairman. A respondent's absence at a hearing is not considered in the final deliberations and has no bearing on the outcome. The respondent's right to be heard is subject to the following limitations:

   a. The respondent may not have an attorney present or any other person as a representative;

   b. The respondent may not introduce references or character witnesses; and

   c. The respondent may request to have a supervisor present who may provide input if requested by the Board. The sworn member directs such requests to their commanding officer, who then notifies the supervisor requested to appear. All such appearances are made on a voluntary, non-remunerated basis.

6. The respondent may not grieve the failure to receive notice of a hearing by the Board, unless the failure is alleged to have been intentional.

7. The Chairman shall advise the respondent of the following:

   a. Testimony is voluntary;

   b. Rules and decorum of the proceedings;

   c. Questions may be asked by Board members; and

   d. Their decision to speak may be withdrawn at any time without inference or penalty.

8. Questions directed towards the respondent are restricted to those pertinent to the facts of the case and should avoid any form of accusation or debate.

9. Upon completion of the testimony, the Chairman excuses the respondent after being advised any recommendations from the Board regarding the case are in an advisory capacity and the Chief of Police makes the final determination.

10. The Chairman may elect to hear testimony from a complainant. Any testimony provided is strictly voluntary.

11. The complainant may not have an attorney present or any other person as a representative. However, at the Chairman's discretion, they should be afforded the opportunity to have a non-legal representative present. This person's role should be to provide support to the complainant or witness and not be disruptive or an active participant.

12. The Board will discuss the case, generally using the following guidelines:

   a. The discussion process will be informal.

   b. All dialogue shall be confined to the facts of the case and information presented as a result of the Internal Affairs Unit investigation or the testimony provided.

   c. Discussion regarding the respondent's character is not permitted.

   d. Discussion is directed toward the determination of whether the action of the respondent violates or does not violate an applicable standard.

 

13. One of two determinations follows the discussion:

    a. Ready to vote; or

    b. Further investigation is required and the case is returned to the investigative source.

14. On determination of "ready to vote," the Chairman calls for a finding in the case.

**.14 *MISCONDUCT CASE FINDINGS***

A. The first vote is directed towards determining a finding in the case. This finding is determined to be one of the following:

   1. "Unfounded" means the allegations reported did not occur.

   2. "Inconclusive" means the allegations could not be proved or disproved.

   3. "Sustained" means the allegations reported are found to have occurred.

   4. “Justified” means the conduct complained of did occur, but was necessary and appropriate to accomplish a valid law enforcement objective.

B. A majority vote must exist to determine any finding. If a majority vote cannot be obtained after subsequent discussion and votes, the Chairman will make the final decision.

C. Following a finding of "Sustained," a discussion shall be held to determine a recommendation for disciplinary action or other remedy. The discussion should include:

   1. Past practices or similar issues;

   2. Legal aspects of issues involved;

   3. Established guidelines or policies concerning escalating discipline affecting the issue; and

   4. Past disciplinary record of the respondent.

   5. Other remedies or alternative courses of action directed towards a behavior adjustment or awareness on the part of the officer include, but are not limited to:

      a. Retraining courses, especially for pattern violations;

      b. Job relocation, either temporary or permanent; or

      c. Psychological evaluation and recommendation.

D. The Chairman shall call for a vote by written secret ballot on the form provided for that purpose. The voting process adheres to the following guidelines:

   1. Each Board member lists a recommendation without influence from the others;

   2. A majority vote controls;

   3. Subsequent discussion and votes are conducted as necessary; and

 

4. Failure to achieve a majority decision is reflected on the record and submitted to the Chief of Police.

E. The Chairman shall record the results and the recommendation of each Board separately and submits the necessary reports to the Chief of Police for final approval. The recommendations of each Board are advisory in nature and non-binding on the Chief of Police.

**.15 *CHIEF'S CITY VEHICLE ACCIDENT ADVISORY ACTION BOARD***

A. The Chief's City Vehicle Accident Advisory Action Board is designed to review all cases involving city (police) motor vehicle crashes involving sworn members.

B. The Chief's City Vehicle Accident Advisory Action Board shall consist of sworn members, as specified in the current Collective Bargaining Agreement.

C. Membership is open to any officer that has completed their initial probationary period and has not incurred a suspension during the previous twelve months.

D. A quorum consists of three (3) members.

E. Each member has one (1) vote.

F. All sworn members vote regardless of the rank of the respondent.

G. A sworn member is excused from voting on any case in which he is a respondent, has participated in, or has witnessed.

H. The Chief of Police may allow the follow to attend the City Vehicle Accident Advisory Action Board meeting:

1. A San Antonio Police Officer's Association representative;

2. The Police Legal Advisor; and

3. A Homicide Unit representative.

I. Each sworn member of the Chief's City Vehicle Accident Advisory Action Board shall sign a pledge of confidentiality agreeing to maintain the right of privacy for the accused sworn member and hold in confidence all allegations, facts, testimony, and evidence brought before the Board.

J. The responsibilities of all members of the Chief's City Vehicle Accident Advisory Action Board shall be the same as those of the Police Advisory Action Board as outlined in Sections .10D and .11 of this procedure.

**.16 *CITY VEHICLE ACCIDENT CASE FINDINGS***

A. A vote shall be taken to determine a finding in the case. This finding is to be either chargeable or non-chargeable.

1. "Chargeable" means the sworn member failed to exercise reasonable care in the operation of the city vehicle, deviated from established driving practices, and was the major cause of the crash.

2. "Chargeable Due to Contributory Factors" means the sworn member failed to exercise care in the operation of the city vehicle, deviated from established driving practices, and was a contributing factor to the crash based on unsafe speed and/or operation or violations of General Manual Procedure 609, *Emergency Vehicle Operations*.

3. "Non-chargeable" means the sworn member exercised reasonable care and caution, the same care and caution that would be exercised by an ordinary and prudent person in the same circumstances as the sworn member, in the operation of the city vehicle.




SAN ANTONIO
POLICE

B. A majority vote must determine any finding. If a majority vote cannot be obtained after subsequent discussion and votes, the Chairman will make the final decision.

C. Following a finding of "Chargeable" or "Chargeable due to Contributory Factors," a discussion is held and information is presented to assign a point value to the crash.

D. Point assessment for sworn members involved in police vehicle crashes is based on the following criteria:

1. Non-chargeable (0 points)

2. Chargeable due to Contributory Factors (1 point)

3. Chargeable (2 points)

E. Additional points are added to all "Chargeable" and "Chargeable due to Contributory Factors" crashes based on the severity of the crash as follows:

1. Damage to the city vehicle that renders the vehicle a total loss. (2 points) The damage is based on documentation provided by the Police Garage.

2. Damage to the city vehicle that exceeds $5,000 in repair costs but does not render the vehicle a total loss. The damage is based on documentation provided by the Police Garage. (1 point)

3. The crash resulted in serious bodily injury, excluding death, to any person(s). (minimum 2 points) "Serious Bodily Injury" means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

4. The crash resulted in bodily injury to any person(s). (1 point) "Bodily Injury" means physical pain, illness, or any impairment of physical condition.

5. If unsafe speed and/or operation is determined to be a contributing factor. (minimum 1 point) (Unsafe speed and/or operation are determined by the investigating supervisor's crash investigation, from the findings of a Traffic Investigation Detail investigation, and/or on recommendation from the findings of the Chief's City Vehicle Accident Advisory Action Board).

6. If a Chargeable or Chargeable due to Contributory Factors crash results in a death, no point value is assessed. The Chief of Police administers whatever discipline he deems appropriate.

F. Following the assessment of a point value to the crash:

1. The Homicide Unit representative shall give the point assessment for each Chargeable and Chargeable due to Contributory Factors crash the sworn member was involved in during the preceding twenty-four (24) months (each crash <u>not</u> exceeding two (2) points total will be removed from consideration for the sworn member's cumulative point assessment total after twelve (12) months).

2. The Board shall then calculate the total point assessment for the sworn member. This total is derived by adding the point assessment for the crash under review and the point assessment for crashes the sworn member was charged with as reported by the Homicide Unit representative in accordance with .16F1.

3. Calculations are based on the date of the crash, not the Board ruling date.

G. Based on the sworn member's cumulative point assessment total, the Board recommends disciplinary action to the Chief of Police as follows:

1. 1 to 2 points - Written Counseling

 

2. 3 points - Written Reprimand
3. 4 points - One (1) day suspension
4. 5 points - Three (3) day suspension
5. 6 points - Five (5) day suspension
6. 7 points - Ten (10) day suspension
7. 8 points or more - A minimum fifteen (15) day suspension with the possibility of an indefinite suspension or job reassignment for numerous crashes within the twenty-four (24) month period.

   *If the sworn member is charged with Manslaughter, Intoxicated Manslaughter, Intoxicated Assault, Criminal Negligent Homicide, Failure to Stop and Render Aid, or Driving While Intoxicated as a result of the crash, the recommended disciplinary action shall be "temporary suspension" until the disposition of the charge.*

H. The Homicide Unit representative shall record the findings and point assessments in the sworn member's departmental driving record file.

I. The Chairman shall record the results and the recommendation of the Board and submits the necessary reports to the Chief of Police with copies to the Internal Affairs Unit. The recommendations of the Board are advisory in nature and are non-binding on the Chief of Police.

J. Any crash that results in a death, regardless of the ruling by the Board, is forwarded to the District Attorney's Office for review.

**.17 *DISCIPLINARY IMPLEMENTATION***

A. Upon completing a review of the recommendations presented by each Board, the Chief of Police shall render a decision as to what disciplinary action, if any, is to be taken.

B. With regard to any action other than suspension, the respondent's Division Commander shall ensure proper implementation of the member's disposition.

C. Officers involved in two crashes (Chargeable or Chargeable due to Contributory Factors) within a twelve (12) month period will either be placed on special assignment or required to ride double with another officer until they pass a remedial driving course at the Training Academy. The assignment is made by the Chief of Police.

D. With regard to suspension, the sworn member shall be given notice of the contemplated disciplinary action in accordance with the current Collective Bargaining Agreement.

E. The Chief of Police, after hearing the sworn member's rebuttal, may decide that a change in discipline from the contemplated discipline is proper and implement an alternative form of discipline which may include a suspension.

F. A record of any type of disciplinary action taken against a member shall be placed in the member's departmental personnel file.

G. Any sworn member facing disciplinary action should refer to the current Collective Bargaining Agreement for details related to the initiation of an appeal, time frames, forfeiture of accumulated leave, and scope of the appeal process.

 

# SAN ANTONIO POLICE DEPARTMENT
## GENERAL MANUAL
### *Procedure 303 – Complaint Matrix*

| LINE COMPLAINTS | FORMAL COMPLAINTS |
|---|---|
| **Suspensions – 3 Days or Less** | **Suspensions – More than 3 Days** |
| **Investigated via Chain of Command to Captains** | **Investigated via Internal Affairs to CAAB** |
| *Line complaints generally constitute disciplinary matters limited to and involving a minor variance from the routine activities and responsibilities of the sworn member.* | *Formal complaints generally constitute matters involving conduct that exhibits a significant variance from behavioral expectations. Formal complaints include, but are not limited to:*<br>○ *Significant behavioral infractions;*<br>○ *Potential to require a suspension beyond 3 days;*<br>○ *All allegations of unnecessary force; or*<br>○ *Any other incident that may require formal disciplinary proceedings in order to be properly resolved.* |

"These are General Guidelines only – Disciplinary Actions may vary based on actual circumstances"

**Captains should consult with a Deputy Chief, where any indications of questionable issues arise.**

| RULES AND REGULATIONS | | RULES AND REGULATIONS | |
|---|---|---|---|
| **Section** | **Title** | **Section** | **Title** |
| **2.02** | Chain of Command | **3.01 A.** | Abide by Laws |
| **3.01 A.** | Abide by Laws and Departmental Orders: Laws | **3.02** | Truthfulness of Members |
| **3.03 C.** | Obey Lawful Orders: Unlawful Orders Prohibited | **3.03 A.** | Obey Lawful Orders: Insubordination |
| **3.04 B.** | Responsibility to Serve the Public: Courtesy | **3.04 C.** | Responsibility to Serve the Public: Conduct and Behavior |
| **3.04 E.** | Responsibility to Serve the Public: Police Action when not in Uniform | **3.05 A. – E.** | Chemical Dependence |
| **3.04 F.** | Responsibility to Serve the Public: Neutrality in Civil Actions | **3.07 B. – F.** | Criticism of the Department: Affects Public Confidence |
| **3.06** | Relationship with Coworkers | **3.08 A. – F.** | Unauthorized Release of Information: Release of Public Statement |
| **3.06 A.** | Relationship with Coworkers: Mutual Respect | **3.11 A. – D.** | Use of Intoxicants |
| **3.06 A, F.** | Relationship with Coworkers: Mutual Respect and Working Relationships | **3.15 A. – C.** | Gratuities, Loans, and Solicitations |
| **3.06 B, C.** | Relationship with Coworkers: Courtesy and Respect to Supervisory Officers | **3.16** | Accepting Rewards |
| **3.06 D.** | Relationship with Coworkers: Supporting Fellow Members | **3.17 A., B.** | Outside Employment: Permission Required |
| **3.06 E.** | Relationship with Coworkers: Support | **3.18 A.** | City Equipment/Property: Improper or Negligent Handling |
| **3.09** | Information on Bulletin | **3.18 D.** | City Equipment/Property: Inventoried property |
| **3.07 A.** | Criticism of the Department: Defamatory | **3.18 E.** | City Equipment/Property: Waste or Conversion |
| **3.18 B.** | City Equipment/Property: Loss through Negligence | **3.19** | Unauthorized Expenditures |
| **3.18 C.** | City Equipment Property: Safe Operation of Vehicles | **3.24 A., B.** | Negotiations on behalf of Suspect |
| **3.23 A.** | Restrictions on Activities While Sick, Injured or on Limited Duty: Remain at Residence | **3.26** | Treatment of Prisoners |
| **3.23 B.** | Restrictions on Activities While Sick, Injured or on Limited Duty: No Extra Employment | **3.27 A., B.** | Giving Information in Internal Investigations |
| **3.28 B.** | Responsibility to Know Laws and Procedures: Written Directives | **3.29 A., B.** | Soliciting Special Privileges |
| **4.01A.** | Members Subject to Duty: Non Emergency Actions | **3.30** | Consorting With Persons of Ill Repute |
| **4.10 D.** | Duty to Report Incidents | **3.31 C.** | Displaying or Discharging Firearms: Discharging Firearms |
| **4.10 E.** | Duty to Report Incidents: Incident Where The City May Be Liable | **3.32 A. – B.** | Activities of Member While Under Suspension |
| **4.10 F.** | Duty to Report Incidents: Danger to Public Health or Society | **3.33** | Arrest in Personal Quarrels |
| **4.12 B.** | Official Reports: Submission of Reports | **3.35** | Report an Arrest, Criminal Charge, or Indictment |
| | | **4.06** | On Duty Activities |
| | | **4.15 A. – C.** | Responsibility for Internal Investigations |

 

# SAN ANTONIO POLICE DEPARTMENT
## GENERAL MANUAL
### *Procedure 303 – Complaint Matrix*

| LINE COMPLAINTS | FORMAL COMPLAINTS |
|---|---|
| **Suspensions – 3 Days or Less** | **Suspensions – More than 3 Days** |
| **Investigated via Chain of Command to Captains** | **Investigated via Internal Affairs to CAAB** |
| *Line complaints generally constitute disciplinary matters limited to and involving a minor variance from the routine activities and responsibilities of the sworn member.* | *Formal complaints generally constitute matters involving conduct that exhibits a significant variance from behavioral expectations. Formal complaints include, but are not limited to:*<br>○ *Significant behavioral infractions;*<br>○ *Potential to require a suspension beyond 3 days;*<br>○ *All allegations of unnecessary force; or*<br>○ *Any other incident that may require formal disciplinary proceedings in order to be properly resolved.* |

"These are General Guidelines only – Disciplinary Actions may vary based on actual circumstances"

**Captains should consult with a Deputy Chief, where any indications of questionable issues arise.**

| PROCEDURES | | PROCEDURES | |
|---|---|---|---|
| **Section** | **Title** | **Section** | **Title** |
| **303.02 D.** | Disciplinary Procedures: Policy | **313.04 A.** | Use of City Vehicles: Authorized Use |
| **307.06 A.** | Information Not Released: Police Incidents | **314.04 B. 2** | Command Notification: Officer is Detained or Arrested |
| **307.06 A1h** | Information Not Released: Police Incidents | **501.05 B.** | Use of Force: Application of Force |
| **309.05 C.** | Weapons: Firearms Safety Rules | **601.07 C. – E.** | Prisoners: Security of Prisoners – Escape Prevention |
| **309.05 E.** | Weapons: Firearms Safety Rules | **604.10. E. F.** | Family Disturbance/Violence: Family/Dating Violence/Disturbance Calls Involving a Sworn Member |
| **309.05 H.** | Weapons: Firearms Safety Rules | **618** | Racial/Bias Profiling |
| **309.06 B.** | Weapons: General Rules for Carrying Firearms: Sworn Officers | **701.05 B. 4b** | Crime Scene Duties: Officers Responsibilities |
| **309.11 E. 2** | Weapons: Submitting Approval to Carry Shoulder Weapons | **705** | Officer Involved Shootings |
| **402.04 F** | N-Code Reporting Program: Procedure | **902.07C** | Leave and Absences Policies: Absences |
| **403.05 B.** | Communications: Radio Transmissions | **918** | Harassment and Discrimination in the Workplace |
| **501.09A** | Use of Force: Report Responsibilities | | |
| **503.01C** | Execution of Arrest Warrant: Introduction | | |
| **505.05 E.** | Misdemeanor Citation Release: Restrictions for Use | | |
| **506.03 E.** | Traffic Law Enforcement: Uniformed Enforcement Actions by Officers | | |
| **506.07 A.** | Traffic Law Enforcement: Officer Conduct with Low Risk Traffic Violators | | |
| **507.04 A. B2, 3 D.W.I.** | Arrest Procedures; Probable Cause for D.W.I or D.U.I. | | |
| **601.05 C. 1** | Prisoners: Handcuffing of Prisoners | | |
| **601.06 A.** | Prisoners: Searching of Prisoners | | |
| **601.07 C.** | Prisoners: Security of Prisoners – Escape Prevention | | |
| **601.07 D.** | Prisoners: Security of Prisoners – Escape Prevention | | |
| **601.14 A. 2.** | Prisoners: Injured/Sick Prisoners | | |
| **604.10 A.** | Family Disturbance/Violence: Family/Dating Violence/Disturbance | | |
| **606.14 A. 3.** | Impounding Property: Releasing Property | | |
| **606.14 D.** | Impounding Property: Releasing Property | | |
| **607.06 C. 3.** | Impounding Vehicles: Officers' Responsibilities | | |
| **607.15 A.** | Inventory and Disposition of Property Inventoried | | |
| **609.05 B. 1.** | Emergency Vehicle Operation | | |
| **610.05 B.** | Missing persons: Reporting | | |

# SAN ANTONIO POLICE DEPARTMENT
## GENERAL MANUAL
### *Procedure 303 – Complaint Matrix*




| LINE COMPLAINTS | FORMAL COMPLAINTS |
|---|---|
| **Suspensions – 3 Days or Less** | **Suspensions – More than 3 Days** |
| **Investigated via Chain of Command to Captains** | **Investigated via Internal Affairs to CAAB** |
| *Line complaints generally constitute disciplinary matters limited to and involving a minor variance from the routine activities and responsibilities of the sworn member.* | *Formal complaints generally constitute matters involving conduct that exhibits a significant variance from behavioral expectations. Formal complaints include, but are not limited to:*<br>o *Significant behavioral infractions;*<br>o *Potential to require a suspension beyond 3 days;*<br>o *All allegations of unnecessary force; or*<br>o *Any other incident that may require formal disciplinary proceedings in order to be properly resolved.* |

"These are General Guidelines only – Disciplinary Actions may vary based on actual circumstances"

**Captains should consult with a Deputy Chief, where any indications of questionable issues arise.**

| PROCEDURES | | PROCEDURES | |
|---|---|---|---|
| **Section** | **Title** | **Section** | **Title** |
| **610.06** | Missing persons: Entering Missing Person Information in the Computer | | |
| **618.08 A.** | Racial/Bias Profiling: Data Collection | | |
| **701.06 A.** | Crime Scene Duties: Officers' General Crime Scene Duties | | |
| **707.08 B. 2.** | Accident Investigation: Officer Responsibility | | |
| **802.05** | Critical Incidents: Initial Responders | | |
| **803.06 A.** | Bomb Threats: Found Explosive Devices | | |
| **905.05 A. 3.** | Off-Duty and Outside Employment: Outside Employment – Discussion | | |
| **905.05 C. 2.** | Off-Duty and Outside Employment: Outside Employment – Eligibility | | |
| **905.05 D 4.** | Off-Duty and Outside Employment: Outside Employment – Employment Permit | | |
| **905.05 D 6.** | Outside Employment: Employment Permit | | |
| **905.05 E. 2.c** | Off-Duty and Outside Employment: Acceptable Forms | | |
| **917.04 C. 1.** | Fiesta Events Attendance Requirements | | |
| **917.04 D. 1.** | Fiesta Events Attendance Requirements – Cancellations | | |
| **917.06 C.** | Fiesta Events Attendance Requirements – Special Events | | |
| **917.06 C. 2.** | Fiesta Events Attendance Requirements – Special Events | | |