UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SHAVONDA BAILEY, *as Next Friend of* K.A., and P.A.; and VIVIAN LAMPKINS, *as Next Friend of* J.L. | § § § § § | |
| VS. | § § | 5:13-CV-00700-FB |
| CITY OF SAN ANTONIO, TEXAS; OFFICER PRESTON, *Individually*; VIDAL DIAZ, *Individually*; MICHAEL FLETCHER, *Individually*; FRANCISCO GALVAN, *Individually*; MATTHEW FLORES, *Individually*; AUBREY PLAUCHE, *Individually*; MATTHEW QUINTANILLA, *Individually*; ROBERT TAMEZ, *Individually*; and PAUL TRIGO, *Individually* | § § § § § § § § § § § | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

NOW COME **OFFICERS NATHAN PRESTON, VIDAL DIAZ, MICHAEL FLETCHER, FRANCISCO GALVAN, MATTHEW FLORES, AUBREY PLAUCHE, MATTHEW QUINTANILLA, ROBERT TAMEZ, AND PAUL TRIGO**, Individually, (hereinafter "Defendants" or individually by name), and pursuant to Rule 56 of the Federal Rules of Civil Procedure, file this, their Motion for Summary Judgment on the claims brought against them by Plaintiffs SHAVONDA BAILEY, *as next friend of* K.A., and P.A.; VIVIAN LAMPKINS *as next friend of* J.L.; BELINDA CARRANCO, *as next friend of* Z. A.; BRANDIE OLIVER, *as next friend of* A.O.; and, CHRISTINE OWENS, *as next friend of* M.O. (hereinafter "Plaintiffs"), and in support thereof would respectfully show unto the Court as follows:

**I.**

Defendants would show the Court there is no genuine issue as to any material fact upon which liability can be predicated in this matter on Plaintiffs' causes of action under the Fourth Amendment, as well as any pendent state law claims alleged by Plaintiffs, and Defendants are entitled to judgment on the Plaintiffs' claims as a matter of law.

**II.**
**PROCEDURAL BACKGROUND**

On August 2, 2013 Plaintiffs SHAVONDA BAILEY, *as Next Friend of* K.A., and P.A.; and, VIVIAN LAMPKINS *as Next Friend of* J.L. filed suit against the City of San Antonio ("the City"), Officer Nathan Preston ("Preston"), and six John Doe Defendants.[1] Preston filed his original answer on October 4, 2013.[2] After their motion for leave was granted, Plaintiffs filed their first amended original complaint on October 25, 2013.[3] The City filed its original answer to the first amended complaint on November 19, 2013.[4] On December 23, 2013 Defendants Vidal Diaz ("Diaz"), Michael Fletcher ("Fletcher"), Francisco Galvan ("Galvan"), Matthew Flores ("Flores"), Aubrey Plauche ("Plauche"), Matthew Quintanilla ("Quintanilla"), Robert Tamez ("Tamez"), and Paul Trigo ("Trigo") filed their original answer.[5] After the court granted their motion for leave, the Plaintiffs filed their Second Amended Complaint on August 22, 2014 adding BELINDA CARRANCO, *as next friend of* Z. A.; BRANDIE OLIVER, *as next friend of* A.O.; and, CHRISTINE OWENS, *as next friend of* M.O. as Plaintiffs.[6] On September 4, 2014

---

[1] Docket #1.
[2] Docket #3.
[3] Docket #7.
[4] Docket #9.
[5] Docket #15.
[6] Docket #36.

the Individual Defendants filed their first amended answer.[7] On September 5, 2014 the City filed its answer to the plaintiffs' second amended original complaint.[8]

## III.
## PLAINTIFFS' CLAIMS

The claims against the Individual Defendants are Plaintiffs' §1983 excessive force claim,[9] a claim for failure to intervene[10] where such intervention would have prevented the violations and/or injuries of Plaintiffs/Mr. Abernathy; and, Plaintiffs' pendent state law claim for assault.[11] Plaintiffs are also bringing claims against the City under §1983 for failing to supervise and/or failing to train, and/or acquiescence in unconstitutional behavior by subordinates.[12]

## IV.
## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[13] The burden of showing the absence of a genuine issue of material fact is borne by the movant.[14] In *Scott v. Harris*, the United States Supreme Court clarified the standard of review in the context of summary judgment.

> As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not

---

[7] Docket #37.
[8] Docket #38.
[9] Docket #36, pp. 7, 8.
[10] Docket #36, p. 8.
[11] Docket #36, p. 11, 12.
[12] Docket #36, p. 8, 9.
[13] FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 319, 322, 106 S. Ct. 2548, 2551, 91 L. Ed. 2d 268 (1985).
[14] *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). <u>When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.</u>[15]

Once the court has "determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record,*...the reasonableness of [Defendant's] actions...is a pure question of law."[16]

## V.
## EXCESSIVE FORCE

Plaintiffs claim Defendants used excessive force during the course of Defendants' attempts to take Decedent into custody. A plaintiff alleging a Section 1983 claim for the use of excessive force under the Fourth Amendment must show that he: "(1) suffered some injury, which (2) resulted from force that was clearly excessive to the need for force, (3) the excessiveness of which was objectively unreasonable."[17] "The Supreme Court has made clear that 'all claims that law enforcement officials have used excessive force--deadly or not--in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard.'"[18] "[T]he amount of force that is constitutionally permissible must be judged by the context in which the force is deployed."[19]

Defendants have pled the affirmative defense of qualified immunity to the Plaintiffs' claims. Defendants contend that at all times relevant to the Defendants attempts to take custody of the Decedent they were acting within their discretionary authority and within the course and

---

[15] 550 U.S. 372, 380 (2007)(emphasis added).
[16] *Id.* at 381, n.8 (emphasis italicized in original).
[17] *See Holland*, 41 F. Supp. 2d at 690 (*quoting Heitschmidt v. City of Houston*, 161 F.3d 834, 1998 WL 809036, at *6 (5th Cir. Nov. 23, 1998)).
[18] *Holland v. City of Houston*, 41 F. Supp. 2d 678, 689 (S.D. Tex. 1999) (*citing Graham v. Connor*, 490 U.S. 386, 395; 104 L.Ed.2d 443; 109 S.Ct. 1865 (1989).
[19] *Holland*, 41 F. Supp. 2d at 691 (*citing Baldwin v. Stalder*, 137 F.3d 836, 840 (5th Cir. 1998)).

scope of their employment with the San Antonio Police Department and that their actions were objectively reasonable. "Qualified" or "good faith" immunity shields government officials performing discretionary functions from liability unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.[20] "This shield of qualified immunity is generally available to government officials...sued under 42 U.S.C. § 1983."[21]

Evaluating whether a Plaintiff's claims overcome a qualified immunity defense requires a two-step analysis of the Plaintiff's claims. One, the Plaintiff must show the Defendant violated his Constitutional rights. Additionally, the Plaintiff must show the Constitutional right allegedly violated was clearly established at the time the events in question occurred.[22] This analysis may be conducted in any sequence.[23] "If the Defendant's conduct did not violate a Plaintiff's constitutional rights under the first prong, or his conduct was objectively reasonable under the second prong, he is entitled to qualified immunity."[24] The Defendant Officers have pled they are entitled to qualified immunity to Plaintiffs' claims against them.[25]

If reasonable public officials could differ on the lawfulness of the officer's actions, his conduct was objectively reasonable and he is entitled to qualified immunity.[26] "Even officers who interpret the law mistakenly but reasonably are entitled to immunity."[27] "As a matter of

---

[20] *Babb v. Dorman,* 33 F.3d 472, 477 (5th Cir. 1994) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S. Ct. 2727 (1982)).
[21] *See Goodson v. City of Corpus Christi,* 202 F.3d 730, 736 (5th Cir. 2000).
[22] *Nerren v. Livingston Police Dept.,* 86 F. 3d 469, 473 (5th Cir. 1996).
[23] *Manis v. Lawson,* 585 F.3d 839, 843 (5th Cir. 2009).
[24] *Blackwell v. Laque,* 275 Fed. Appx. 363, 366 (5th Cir. La. 2008), citing *Hathaway v. Bazany,* 507 F.3d 312, 319 (5th Cir. 2007).
[25] Docket #37, pp. 7, 8.
[26] *See Phannstiel v. Marion,* 918 F.2d 1178, 1183 (5th Cir. 1990); *Sanchez v. Swyden,* 139 F.3d 464, 467 (5th Cir. 1998).
[27] *Flores v. City of Palacios,* 381 F.3d 391, 399-400 (5th Cir. 2004).

public policy, qualified immunity provides ample protection to all but the plainly incompetent or those who knowingly violate the law."[28]

Once an officer pleads the affirmative defense of qualified immunity, the burden shifts to the plaintiff, who must rebut the defense by establishing the officer's allegedly wrongful conduct violated clearly established law.[29] The plaintiff cannot meet his burden based on conclusory allegations and assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the officer's conduct.[30]

**Plaintiffs' Allegations:**

In their live pleading, Plaintiffs allege as follows:

> On or about August 4, 2011, in the early morning hours, Pierre Abernathy (hereinafter "Abernathy"), a paranoid schizophrenic, was going to pick up his fiancé from work and encountered San Antonio Police officers beginning to follow him. Because of past encounters with law enforcement, Mr. Abernathy feared for his safety. Mr. Abernathy drove to his mother's house where he believed it would be safe. Mr. Abernathy pulled into his mother's driveway and proceeded to exit his vehicle. Defendants Preston, Diaz, Fletcher, Flores, Galvan, Plauche, Quintanilla, Tamez and Trigo chased Mr. Abernathy around the front yards of his mother and neighbors and began tazing him. At one point Mr. Abernathy was in his neighbor's front yard and while Defendants Preston, Diaz, Fletcher, Flores, Galvan, Plauche, Quintanilla, Tamez and Trigo had him in custody with his hands cuffed behind his back they decided to punish Mr. Abernathy, and released a K-9 unit who bit and mauled Mr. Abernathy as his mother, family, and neighbors watched in horror. Defendants Preston, Diaz, Fletcher, Flores, Galvan, Plauche, Quintanilla, Tamez and Trigo then began to savagely beat Mr. Abernathy, while he lay there defenseless in the fetal position. While they were beating Mr. Abernathy, Defendants Preston, Diaz, Fletcher, Flores, Galvan, Plauche, Quintanilla, Tamez and Trigo were boasting and bragging, encouraging each other saying "yeah get some, yeah get some" while Mr. Abernathy lay motionless. Defendants Preston, Diaz, Fletcher, Flores, Galvan, Plauche, Quintanilla, Tamez and Trigo continued beating Mr. Abernathy as if he was a pinata using their fists and batons as well as tazing him as the K-9 unit mauled him like his favorite dog treat.[31]

---

[28] *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).
[29] *Bazan v. Hidalgo County,* 246 F.3d 481, 489 (5th Cir. 2001).
[30] *Id.*
[31] Docket #36, pp. 5, 6.

. . . . . . .

"At not (sic) time during the incident was Mr. Abernathy violent and he did not resist the officers requests."[32]

The actual facts of the incident do not support Plaintiffs' version of the events that morning. Defendants' summary judgment evidence proves an altogether different scenario. Abernathy first got the attention of the police when he was seen driving the wrong way on La Cantera Parkway,[33] after which Abernathy led the police on a 14.4 mile pursuit through Northwest San Antonio which ended at what would later be determined to be the entrance to his mother's driveway.[34]

Defendants have attached to the Appendix to Defendants' Motion for Summary Judgment as summary judgment evidence, the Affidavit of Detective Preston, along with the audio and video recording of the incident made the basis of this lawsuit which was taken from Preston's vehicle by the COBAN digital recording equipment (hereinafter "COBAN"). The recording and affidavit have been, labeled as Exhibits "A" and "B" respectively, and are incorporated herein for all purposes as though set forth herein verbatim. The COBAN video shows Abernathy intentionally fleeing the police and refusing to pull his vehicle over even though the officers clearly had their lights and sirens on.[35]

Once stopped and out of his vehicle, Abernathy refused to comply with the officers' commands to put his hands behind his back to allow himself to be handcuffed.[36] The COBAN audio clearly captures the sounds of the officers ordering Abernathy to put his hands behind his

---

[32] *Id.* at p. 6.
[33] Exhibit "D", p. D-1.
[34] Exhibit "B", p. 2.
[35] Exhibit "A".
[36] Exhibit "B", pp. 2, 3; see also Exhibit "D", p. D-3.

back.[37] Preston was able to handcuff Abernathy's right arm,[38] the sound of which is captured on the COBAN audio.[39] Although Abernathy initially seemed to be complying after Preston got one handcuff on him, Abernathy began to physically resist further attempts to handcuff him.[40] The COBAN audio captured the sounds of the intense struggle that followed when Abernathy refused to comply.[41] Preston was shocked when he came into contact with Galvan's Taser wires and then Preston and Abernathy both ended up against another vehicle in the driveway.[42] Preston's microphone went mute during this part of the struggle.[43] The COBAN video then captures Abernathy running away from several officers and a SAPD K-9 dog.[44] Abernathy was finally taken down in the front yard of retired Air Force veteran Gary Hovermale ("Hovermale"). During this part of the intense struggle, Preston's microphone started audio recording once again.[45] After an intense struggle, the sounds of which are captured on the COBAN audio, the officers are finally able to handcuff Abernathy. The COBAN audio appears to capture the approximate time Abernathy was finally handcuffed and brought under control.[46]

Hovermale's deposition testimony has been attached to the Appendix to Defendants' Motion for Summary Judgment as summary judgment evidence, labeled as Exhibit "C" and is incorporated herein for all purposes as though set forth herein verbatim. Hovermale testified that Abernathy was wrestling with 4-6 officers in his flower bed and "he was resisting quite heavy."[47] Hovermale further testified "the officers was (sic) trying to get his right arm behind his back and

---

[37] Exhibit "A", at 3:25:31.
[38] Exhibit "B", p. 2.
[39] Exhibit "A", at 3:25:45.
[40] Exhibit "B", p. 2; see also Exhibit "D", p. D-3
[41] Exhibit "A", at 3:25:47.
[42] Exhibit "B", p. 3.
[43] *Id.*
[44] Exhibit "A", at 3:26:56.
[45] Exhibit "A", at 3:28:08; see also Exhibit "B", p. 3.
[46] Exhibit "A", at 3:30:20 to 3:30:50.
[47] Exhibit "C", pp. 57, 58.

he appeared to be very strong at the time and they had a very difficult time getting his arm behind his back."[48] Hovermale added that it took three to four minutes to get Abernathy's arm behind his back because he was very strong.[49] Hovermale's testimony is corroborated by the COBAN audio. On the audio one can hear a violent intense struggle with one officer stating Abernathy was not yet under control[50] and Preston asking for more help to control him.[51] Abernathy was never motionless during the struggle as the Plaintiffs allege. According to Hovermale, once Abernathy was handcuffed all police activity ceased.[52]

As additional summary judgment evidence, the Defendant Officers have attached to the Appendix to Defendants' Motion for Summary Judgment, their sworn statements, as well as the sworn statement of Hovermale, labeled as Exhibit "D". Said statements are incorporated herein for all purposes as though set forth herein verbatim. In their statements, each Defendant sets out his respective role in the pursuit, detention, and arrest of Abernathy, and his use of open hand techniques and/or intermediate weapons on Abernathy.

Defendants have also attached to the Appendix to Defendants' Motion for Summary Judgment as summary judgment evidence, the affidavit of Albert Ortiz, Defendants' testifying expert, along with his curriculum vitae, labeled as Exhibit "E", and incorporated herein for all purposes as though set forth herein verbatim. As evidenced by his affidavit, Mr. Ortiz conducted an exhaustive review of Plaintiffs' complaint and Defendants' actions in this case. Relying on his extensive background in law enforcement, Mr. Ortiz opines that Defendants were acting within the course and scope of their employment, were exercising their discretionary authority

---

[48] *Id.* at p. 59.
[49] *Id.*
[50] Exhibit "A", at 3:28:17.
[51] *Id.* at 3:29:01; see also Exhibit "B", p. 3.
[52] Exhibit "C", at p. 19.

and that their actions in connection with the incident involving Abernathy were objectively reasonable. Mr. Ortiz opined,

> It is my opinion that any officer in the same or similar circumstances as Officer Galvan and the other defendant officers involved in the ensuing pursuit and struggle with Abernathy, could reasonably believe Abernathy was evading arrest and probable cause existed to arrest him for evading arrest and the traffic violations he committed. It is also my opinion any officer in the same or similar circumstances as the defendant officers could reasonably believe Abernathy was a danger to himself and others and it was imperative they take him into custody.[53]

Mr. Ortiz further opined that any officer in the same or similar circumstances as the Defendant Officers could reasonably believe each Defendant's use of force was necessary to overcome the resistance offered by Abernathy, and any officer in the same or similar circumstances as the Defendant Officers could act in the same or similar manner as each Defendant Officer.[54]

Moreover, the medical evidence makes it clear the actions of the Officers did not cause Abernathy's death. Defendants have attached to the Appendix to Defendants' Motion for Summary Judgment as summary judgment evidence, the affidavit of Dr. Vincent DiMaio, along with his curriculum vitae, labeled as Exhibit "F", and incorporated herein for all purposes as though set forth herein verbatim. In his affidavit, Dr. DiMaio opined:

> ....[I]t is my opinion that, in all medical probability, Pierre T. Abernathy, a 30 year-old black male, died as a result of the Excited Delirium Syndrome (EDS). The mechanism of death was a cardiac arrhythmia due to a hyper-adrenergic state secondary to his Excited Delirium, acute cocaine intoxication, schizophrenia and a violent struggle in conjunction with an enlarged heart.[55]

Dr. DiMaio explained that:

> Delirium involves an acute (minutes to hours), transient disturbance in consciousness and cognition. There is disorientation; disorganized and

---

[53] Exhibit "E", p. 7.
[54] *Id.* at pp. 8-12.
[55] Exhibit "F", p. 8.

inconsistent thought processes; inability to distinguish reality from hallucinations; disturbances in speech; disorientation to time and place; misidentification of individuals. When the delirium involves combative and/or violent behavior, it is termed Excited Delirium (ED). Excited Delirium Syndrome (EDS) involves the sudden death of an individual, during or following an episode of excited delirium, in which an autopsy fails to reveal evidence of sufficient trauma or natural disease to explain the death.[56]

Individuals in ED are often resistant to the effects of blows from a baton, or use of a TASER. The individuals are often said to be sweating profusely and have "super human" strength, both described in this case. Deaths due to EDS were originally described in individuals with intrinsic mental illness, specifically schizophrenia. In our present society, they are more commonly associated with abuse of illegal stimulants such as cocaine or methamphetamine.[57]

The clinical presentation of Mr. Abernathy was of an individual in an acute psychotic state due to decompensation of his schizophrenia and acute cocaine intoxication.[58]

Dr. DiMaio's opinions are supported by the autopsy findings of the Bexar County Medical Examiner, Dr. Kimberly Molina. Defendants have attached to the Appendix to Defendants' Motion for Summary Judgment as summary judgment evidence, the autopsy and toxicology reports from the Bexar County Medical Examiner's Office, labeled as Exhibit "G", which are incorporated herein for all purposes as though set forth herein verbatim. Dr. Molina reported:

> It is our opinion that Pierre Towell Abernathy, a 30 year old male, died as a result of the combined effects of intoxication with cocaine, a prolonged struggle, and a cardiomyopathy (an enlarged heart).[59]

Still further summary judgment evidence comes from the Defendants' toxicology expert, J. Rod McCutcheon. Defendants have attached to the Appendix to Defendants' Motion for Summary Judgment as summary judgment evidence, the affidavit of Mr. McCutcheon, along

---

[56] *Id.* at p. 6.
[57] *Id.*
[58] *Id.*
[59] Exhibit "G", p. 38.

with his curriculum vitae, labeled as Exhibit "H", and incorporated herein for all purposes as though set forth herein verbatim. Mr. McCutcheon opined that:

> The Bexar County Medical Examiner's Toxicology Report for Mr. Abernathy shows the perimortem blood sample taken from Mr. Abernathy, during medical treatment, contained cocaine at a concentration of 0.17 mg/L (milligrams per liter). Mr. Abernathy's postmortem blood contained benzoylecgonine, a cocaine metabolite, at a concentration greater than 0.50 mg/L. The cocaine finding in the blood of Mr. Abernathy means he was under the influence of cocaine during the time he was struggling with the police officers.[60]

Mr. McCutcheon further opined that:

> " within reasonable toxicological probability, Mr. Abernathy was experiencing toxic effects of cocaine at the time of his death, and his use of cocaine was a contributing factor to his death."[61]

"Fourth Amendment jurisprudence has long recognized that the right to make an arrest ... necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."[62]. Law enforcement officers are often required to use force during the course and scope of their duties and "'[ not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment."[63]. The court should consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight".[64]

As evidenced by the COBAN recording, it is undisputed the officers initially attempted verbal communication with Abernathy to get him into custody even after Abernathy led then on a fourteen mile pursuit. It is also undisputed the officers did not use physical force until Abernathy failed to comply with their commands and Abernathy pulled his right arm away with

---

[60] Exhibit "H", p. 3.
[61] *Id.*
[62] *Graham v. Connor*, 490 U.S. 386,396 (1989) (citing *Terry v. Ohio*, 392 U.S. 1,22-27 (1968))
[63] *Id.* at 396 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973))
[64] *Graham*, 490 U.S. at 396.

the dangling handcuff.[65] It is equally undisputed that Abernathy actively resisted arrest and was extremely aggressive, exhibiting extraordinary superhuman strength while overcoming the Defendants' use of intermediate weapons until he was finally handcuffed.[66] During the struggle the officers were forced to use intermediate weapons in subduing Abernathy. It was a rapidly evolving, volatile situation and the force used by the Defendant Officers was necessary, reasonable, and appropriate and not clearly excessive under the totality of the circumstances they faced at the time.

"In determining the reasonableness of the manner in which a seizure is effected, [the court] must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion."[67] The actions that Abernathy initiated in this case posed a substantial and immediate risk of serious physical injury or death to not only the Defendants, but possibly to innocent civilians. These actions include:

1) Driving the wrong way on La Cantera Parkway;

2) Refusing to pull his vehicle over for law enforcement officers using lights and sirens;

3) Leading officers on a fourteen mile pursuit through northwest San Antonio while committing numerous traffic violations;

4) Failing to allow himself to be handcuffed peacefully; and,

5) Resisting arrest.

The paramount governmental interest in eliminating the risk of death or serious bodily harm that Abernathy's actions posed to the Defendants, and innocent civilians, clearly justified the actions of Defendants in using force against him. Defendants submit that because the record

---

[65] Exhibit "B", p. 3; Exhibit "D", p. D-3.
[66] Exhibit "B", p. 4.
[67] *United States v. Place*, 462 U.S. 696, 703, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983). *Scott v. Harris*, 550 U.S. 372, 383-384 (U.S. 2007).

taken as a whole in this case could not lead a rational trier of fact to find for the Plaintiffs, there is no genuine issue for trial and the Court should find that under the circumstances the actions of Defendants were objectively reasonable and they are entitled to qualified immunity to the Plaintiffs' § 1983 claim of excessive force.

## VI.
## FAILURE TO INTERVENE

Defendants assert they are entitled to summary judgment on the Plaintiffs' claim for failure to intervene because Plaintiffs have failed to allege any facts upon which such a bystander claim can be based.[68] There is no vicarious liability under Section 1983 claims.[69] The Fifth Circuit recognizes a cause of action under § 1983 for an officer's failure to take reasonable measures to protect a suspect from excessive force.[70] However, except for the Plaintiffs' statement in their live pleading that "by failing to intervene where such intervention would have prevented the violations and/or injuries of Plaintiffs/Mr. Abernathy"[71] there is absolutely no mention anywhere else in the pleading alleging any facts upon which a bystander claim can be based and the Plaintiffs have provided absolutely no evidence to support a failure to intervene claim against any of the Defendant Officers. On the contrary, Defendants' expert, Albert Ortiz, opined that:

> Nothing in the record of this case indicates any of the defendant officers were aware of, received information, and/or believed their own actions or those of the other defendant officers were improper, violated the law, or the policies and procedures of the SAPD. In my opinion, no officer in the same or similar circumstances as the defendant officers could reasonably believe the actions taken by the defendant officers to effectuate the arrest of Mr. Abernathy by overcoming his resistance were such that the officer(s) should intervene to stop them from accomplishing this legitimate police objective.[72]

---

[68] See *Richie v. Wharton County Sheriff Dep't Star Team*, 513 Fed. Appx. 382, 385 (5th Cir. 2013).
[69] *Id.*
[70] See, *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995).
[71] Docket #36, p. 8.
[72] Exhibit "E", p. 12.

Without any evidence to support the Plaintiffs' allegations, Defendants are entitled to summary judgment on Plaintiffs' bystander claims.

## VII.
## PLAINTIFFS' STATE TORT CLAIM OF ASSAULT AGAINST DEFENDANTS IS BARRED UNDER THE ELECTION PROVISIONS OF THE TEXAS TORT CLAIMS ACT

Section 101.106, Election of Remedies, of the Texas Tort Claims Act provides in pertinent part as follows: . . .

> (f) If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.[73]

Plaintiffs' suit against Defendants is clearly and solely based upon conduct within the general scope of Defendants' employment.[74] Defendants submit Plaintiffs have judicially admitted that Defendants were acting within the general scope of their employment with the City of San Antonio at all times relevant to Plaintiffs' complaints.[75] However, even in the absence of Plaintiffs' judicial admission, there is no doubt under the facts of this case that this case falls within the bar of §101.106(f). Section 101.001(2) of The Texas Tort Claims Act (TTCA) defines an employee as "...a person, including an officer or agent, who is in the paid service of a governmental unit...."[76] And clearly the City of San Antonio is a governmental unit as defined by the TTCA. Section 101.001 of the TTCA states in pertinent part, that "[i]n this chapter: ...

---

[73] TEX. CIV. PRAC. & REM. CODE § 101.106(f).
[74] Docket No. 36, pp. 2-5.
[75] See *Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 550 (5th Cir. 2009), cert. denied, 130 S. Ct. 1285, 175 L. Ed. 2d 1075 (2010) (Facts admitted in a pleading are binding judicial admissions.)
[76] TEX. CIV. PRAC. & REM. CODE § 101.001(2).

---

(3) "Governmental unit" means: ... (B) a political subdivision of this state, including any city...."[77]

The Texas Supreme Court has recently ruled that Section 101.106(f) of the TTCA provides that a suit against a government employee acting within the general scope of his employment must be dismissed "if it could have been brought under this chapter [that is, under the (TTCA)] against the governmental unit."[78] Prior to the Texas Supreme Court's recent ruling, claims against employees of governmental units based on intentional torts were not considered subject to the bar under §101.106 because immunity for such claims was not waived under the provisions of the TTCA dealing with intentional torts.[79] However, in the *Mission* case the Texas Supreme Court clarified that even claims based on intentional torts are subject to the provisions of section 101.106, stating that "all [common-law] tort theories alleged against a governmental unit ... are assumed to be 'under [the Tort Claims Act]' for purposes of section 101.106." That holding was recently affirmed by the Texas Supreme Court in its holding in *Franka,* supra, wherein the Court stated that "...the rule that any tort claim against the government is brought "under" the [TTCA] for purposes of section 101.106, even if the [TTCA] does not waive immunity" is firmly established.[80] In applying the rule under section 101.106(f) the *Franka* court stated,

> Properly construed, section 101.106(f)'s two conditions are met in almost every negligence suit against a government employee: he acted within the general scope of his employment, and suit could have been brought under the Act — that is, his claim is in tort and not under another statute that independently waives immunity. In such cases, the suit "is considered to be against the employee in the employee's

---

[77] TEX. CIV. PRAC. & REM. CODE § 101.001(3)(B).
[78] *Franka v. Velasquez,* No. 07-0131, 332 S.W.3d 367, 54 Tex. Sup. J. 460, 2011 Tex. LEXIS 70 *1 (Tex. Jan. 21, 2011).
[79] *Mission Consolidated Independent School District v. Garcia,* 253 S.W. 3d 653, 658 (Tex. 2008).
[80] *Franka,* 2011 Tex. LEXIS 70 at *6.

official capacity only", and the plaintiff must promptly dismiss the employee and sue the government instead.[81]

As pointed out above, Plaintiffs' State tort claim against Defendants for assault is based on conduct within the general scope of Defendants' employment with a governmental unit, and under the recent Texas Supreme Court rulings of *Mission ISD* and *Franka,* even Plaintiffs' intentional tort claims ". . . are assumed to be 'under [the Tort Claims Act]' for purposes of section 101.106." Therefore, Defendants respectfully submit the Plaintiffs' pendent state tort claim for assault must be considered to be against Defendants in their official capacity only and must be dismissed.[82]

WHEREFORE PREMISES CONSIDERED, Defendants Officers Nathan Preston, Vidal Diaz, Michael Fletcher, Francisco Galvan, Matthew Flores, Aubrey Plauche, Matthew Quintanilla, Robert Tamez, and Paul Trigo respectfully request the Court grant their Motion for Summary Judgment and dismiss, with prejudice to the re-filing of same, all of Plaintiffs' claims against them, and for such other and further relief, both general and special, at law or in equity, to which Defendants may be justly entitled.

Respectfully submitted,

**HOBLIT FERGUSON DARLING, L.L.P.**
Bank of America Plaza Building
300 Convent Street, Suite 1450
San Antonio, Texas 78205
Telephone: (210) 224-9991
Facsimile: (210) 226-1544
Email: mralls@hfdlaw.com

By: _____
N. MARK RALLS
State Bar No. 16489200

---

[81] *Id.* at *10 (Internal citations omitted).
[82] *See, Franka v. Velasquez,* 332 S.W.3d 367 (Tex. 2011).

**ATTORNEY FOR DEFENDANTS, OFFICERS NATHAN PRESTON, VIDAL DIAZ, MICHAEL FLETCHER, FRANCISCO GALVAN, MATTHEW FLORES, AUBREY PLAUCHE, MATTHEW QUINTANILLA, ROBERT TAMEZ, AND PAUL TRIGO**

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of March, 2015, I traditionally filed the foregoing with the Clerk of Court via hand-delivery. The foregoing instrument was served on the following on March 2, 2015 by the means indicated:

Mr. Christopher J. Gale
GALE LAW GROUP, PLLC
P.O. Box 2591
Corpus Christi, Texas 78403
*Attorney for the Plaintiffs*

*Via Certified Mail R/R/R:*
*7010 1060 0001 6885 4670*

Michael D. Siemer
Assistant City Attorney
City of San Antonio – Litigation Division
111 Soledad Street, 10th Floor
*Attorney for the City of San Antonio*

*Via First Class Mail:*

_____
N. MARK RALLS